## CLIFFORD v CACTUS DRILLING CORPORATION

Docket No. 67917. Argued December 6, 1983 (Calendar No. 3).—Decided August 27, 1984.

Kevin L. Clifford was injured while working for Cactus Drilling Corporation and received workers' compensation benefits. Shortly after his return to work he missed a day's work allegedly because of a recurrence of pain caused by the injury and was discharged the next day. He brought an action in the Kalkaska Circuit Court, asserting that his employer had no right to terminate his employment solely because he missed work as a result of a work-related injury. The court, William A. Porter, J., granted the defendant's motion for summary judgment on the ground that the plaintiff had failed to state a claim upon which relief could be granted. The Court of Appeals, T. M. Burns and Cynar, JJ. (R. B. Burns, P.J., dissenting), reversed in an opinion per curiam (Docket No. 51868). The defendant appeals.

In an opinion by Justice Kavanagh, joined by Justices Levin, Ryan, Brickley, Cavanagh, and Boyle, the Supreme Court *held:*

The plaintiff did not plead a public policy exception to the rule that either party to an employment contract for an indefinite term may terminate it at any time for any, or no, reason. Certainly an employer's power to discharge an employee at will should not prevail when that power is exercised to prevent an employee from asserting his statutory rights under the Worker's Disability Compensation Act, but there is no evidence or reason to infer that the plaintiff's right to claim benefits was chilled in any way. The plaintiff did not allege that he was discharged in retaliation for filing a workers' compensation claim; rather, he alleged that he was fired because he missed

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 73 Am Jur 2d, Summary Judgment § 26.

[1-4] 53 Am Jur 2d, Master and Servant §§ 34, 43, 48, 48.7.

[1-4] Modern status of rule that employer may discharge at-will. employee for any reason. 12 ALR4th 544.

Recovery for discharge in retaliation for filing workmen's compensation claim. 63 ALR3d 979.

[2-4] 81 Am Jur 2d, Workmen's Compensation § 55.

work because of a work-related injury for which he had already received workers' compensation benefits, and he has stated that he has no further claim.

Reversed.

Chief Justice Williams dissented. He would hold that an allegation by an employee that he has been discharged solely because of absence from work resulting from a work-related injury states a cause of action sufficient to withstand a motion for summary judgment. The cause of action is an exception on public policy grounds to the employment-at-will rule and is not barred by the exclusive remedy provision of the workers' compensation act.

1. Generally, a contract for permanent employment or for an indefinite term is terminable by either party for any or no reason. Where specific grounds for termination have been identified by legislatures and courts as being repugnant to a clearly expressed public policy, however, an employer's absolute freedom to discharge an employee has been curtailed. In addition to statutory restrictions, public policy exceptions to the employment-at-will rule have been recognized by the courts where the discharge was in retaliation for exercising constitutional or statutory rights or where the employee refused to follow an employer's direction to act in violation of the law.

2. In this case, the plaintiff alleged that he was discharged because of an absence from work resulting from a work-related injury. Under the workers' compensation act, an employer may not discharge an employee in retaliation for exercising rights provided by the act, nor may the employer create an atmosphere of reprisal that chills the employee's exercise of such rights. Discharge of an employee because of absence resulting from a work-related injury is a subtle infringement on rights provided by the act against which employees must be protected. Recognition of a cause of action for such a wrongful discharge does not curtail the employer's ability to assert as an affirmative defense the existence of a just cause for dismissal.

3. An action for wrongful discharge for absence from work resulting from a work-related injury is not barred by the exclusive remedy provision of the workers' compensation act, because it does not attempt to bypass benefits as a remedy for a work-related injury, but seeks damages for the employer's attempt to avoid a statutory duty by intentional retaliation for the exercise of statutory rights.

109 Mich App 776; 312 NW2d 380 (1981) reversed.

1. MASTER AND SERVANT — EMPLOYMENT AT WILL — SUMMARY JUDG-
MENT.

An allegation by a worker that he was discharged as a result of
an absence from work because of a work-related injury did not
state a cause of action that was an exception, on public policy
grounds, to the rule that either party to an employment
contract for an indefinite term may terminate it at any time
for any, or no, reason.

DISSENTING OPINION BY WILLIAMS, C.J.

2. MASTER AND SERVANT — WORKERS' COMPENSATION — EMPLOYMENT
AT WILL — SUMMARY JUDGMENT.

*An allegation by an employee that he has been discharged
because of absence from work resulting from a work-related
injury states a cause of action sufficient to withstand a motion
for summary judgment; the cause of action is an exception on
public policy grounds to the employment-at-will rule and is not
barred by the exclusive remedy provision of the workers' com-
pensation act (MCL 418.131; MSA 17.237[131]; GCR 1963,
117.2[1]).*

3. MASTER AND SERVANT — EMPLOYMENT AT WILL — TERMINATION OF
EMPLOYMENT — PUBLIC POLICY.

*In addition to statutory restrictions on the general rule that a
contract for permanent employment or for an indefinite term is
terminable at the will of either party for any or no reason, the
courts have recognized public policy exceptions where an em-
ployee was discharged in retaliation for the exercise of constitu-
tional or statutory rights, or for refusal to act at the instruction
of the employer in violation of the law.*

4. MASTER AND SERVANT — WORKERS' COMPENSATION — EMPLOYMENT
AT WILL — TERMINATION OF EMPLOYMENT.

*Discharge of an employee because of absence from work resulting
from a work-related injury is a subtle infringement on the
employee's right against discharge for filing a workers' compen-
sation claim, giving rise to a cause of action for wrongful
discharge subject to the affirmative defense that the employee
was discharged for a just cause.*

*Shanahan & Scheid* (by *Clark Shanahan)* for the
plaintiff.

*Cholette, Perkins & Buchanan* (by *Edward D.
Wells)* for the defendant.

Amicus Curiae:

*Clark, Klein & Beaumont* (by *Dwight H. Vincent, John F. Burns,* and *Fred W. Batten)* for Michigan Manufacturers Association.

KAVANAGH, J. The issue in this case is whether plaintiff-employee's allegation that he was discharged as a result of an absence from work because of a work-related injury constitutes a cause of action as a public policy exception to the employment-at-will doctrine.

We hold that plaintiff has not pleaded a public policy exception to the employment-at-will doctrine and we reverse the judgment of the Court of Appeals, *Clifford v Cactus Drilling Corp,* 109 Mich App 776; 312 NW2d 380 (1981), and reinstate the trial court's order of summary judgment in favor of defendant. Accordingly, it is unnecessary to address the question whether this action is barred by the exclusive remedy provision of the Worker's Disability Compensation Act, MCL 418.131; MSA 17.237(131).

The facts of this case are adequately stated in the dissenting opinion of Judge R. B. BURNS in the Court of Appeals:

"Plaintiff alleged that defendant fired him for missing work. Plaintiff further alleged that defendant had no right to so fire him since his absence from work was due to a disability arising from a work-related injury for which he had received workers' compensation benefits.

"The record reveals that plaintiff was injured on the job on December 20, 1977. He received workers' compensation benefits for a period of five weeks. He returned to work, but a recurrence of the pain caused by the injury forced him to call in sick on February 14, 1978. He was fired the next day. Plaintiff commenced suit, and defendant moved for summary judgment on

the ground that plaintiff had failed to state a claim upon which relief could be granted. The motion was granted by the trial court."

The employment-at-will doctrine was recently restated by this Court in *Suchodolski v Michigan Consolidated Gas Co*, 412 Mich 692, 694-695; 316 NW2d 710 (1982): "In general, in the absence of a contractual basis for holding otherwise, either party to an employment contract for an indefinite term may terminate it at any time for any, or no, reason". The Court went on to explain that exceptions have been engrafted onto the rule on the basis of "the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable". One such exception was established by the Court of Appeals in *Sventko v Kroger Co*, 69 Mich App 644; 245 NW2d 151 (1976). In *Sventko*, the plaintiff alleged that she was discharged solely in retaliation for her filing of a workers' compensation claim. The Court held that a retaliatory discharge for the filing of a workers' compensation claim is in contravention of public policy and as such constitutes an exception to the employment-at-will doctrine.

We cannot agree, however, that an employee's protection from discharge in retaliation for filing a workers' compensation claim necessarily includes protection from discharge because of an absence from work because of a work-related injury.

Certainly an employer's power to discharge an employee at will should not prevail when that power is exercised to prevent an employee from asserting his statutory rights under the Worker's Disability Compensation Act. The case before us presented no evidence or reason to infer that plaintiff's statutorily conferred right to claim workers' disability compensation benefits was

chilled in any way. Plaintiff made no claim that he was deprived of his legal rights under the Worker's Disability Compensation Act. Plaintiff did not allege that he was discharged in retaliation for filing a claim for compensation. Plaintiff alleged that he was fired because he missed work because of a work-related injury for which he had already received workers' disability compensation benefits. Plaintiff has stated that he has no further claim.

Reversed.

LEVIN, RYAN, BRICKLEY, CAVANAGH, and BOYLE, JJ., concurred with KAVANAGH, J.

WILLIAMS, C.J. *(dissenting)*. The issue presented in this case is whether an employee who alleges that his employment has been terminated for absence due to a work-related injury has sufficiently pleaded a cause of action to withstand a motion for summary judgment. We hold that plaintiff has pleaded a public policy exception to the employment-at-will doctrine. Additionally, we hold that this action is not barred by the exclusive remedy provision of the Worker's Disability Compensation Act, MCL 418.131; MSA 17.237(131).

I

Plaintiff, employed by defendant as a floor hand, was injured at work in December, 1977. Defendant paid workers' compensation benefits for a period of five weeks. Plaintiff subsequently returned to work for four days. However, because of an alleged recurrence of pain caused by the work-related injury, plaintiff called in sick on February 14, 1978. He was fired the next day. The parties agree that plaintiff was an "at will" employee.

Plaintiff commenced suit, alleging in pertinent part:

"5. * * * Defendant fired plaintiff for missing work.

"6. * * * Plaintiff missed work because of a work-related injury.

"7. While plaintiff's work tenure was otherwise at the discretion of defendant, the latter had no right to fire plaintiff solely for his work absence due to disability arising out of a work-related injury."

Defendant's answer raised the affirmative defense that plaintiff had failed to state a claim upon which relief could be granted.[1] GCR 1963, 117.2(1). Plaintiff moved to strike the affirmative defense, citing *Sventko v Kroger Co,* 69 Mich App 644; 245 NW2d 151 (1976). The trial court distinguished *Sventko* from the present case on the facts and granted defendant's subsequent motion for summary judgment.

On appeal, the Court of Appeals reversed, with one member dissenting. 109 Mich App 776; 312 NW2d 380 (1981). The Court of Appeals majority stated that an employee's protection from discharge in retaliation for filing a workers' compensation claim necessarily included protection from termination because of an absence due to a work-related injury. The Court reasoned that the contrary result "would have a chilling effect on the filing of such claims. Public policy, therefore, dictates the opposite result". 109 Mich App 777-778.

Defendant disagrees that there has been any violation of public policy. Defendant argues that plaintiff, who has received his full entitlement to

---

[1] Defendant also raised the affirmative defense that plaintiff's action was barred by the exclusive remedy provision of the workers' compensation act, MCL 418.131; MSA 17.237(131). See Part IV of this opinion.

workers' compensation benefits, never alleged that his termination was in retaliation for seeking those benefits. Defendant contends that plaintiff has failed to plead a public policy exception to the employment-at-will rule and, therefore, the Court of Appeals erred in holding that plaintiff set forth a cause of action.

This Court granted leave to appeal. 417 Mich 1038 (1983).

## II

Generally, a contract for permanent employment, or for an indefinite term, may be terminated for any or for no reason. As this Court stated in *Lynas v Maxwell Farms,* 279 Mich 684, 687; 273 NW 315 (1937):

"In general it may be said that in the absence of distinguishing features or provisions or a consideration in addition to the services to be rendered, such contracts [for permanent employment or for life] are indefinite hirings, terminable at the will of either party."

See also *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980).

This common-law characterization of the employment relationship as "at will" evolved from the judiciary's unwillingness to interfere with parties' "freedom" to contract and a belief in the equality of bargaining power between employer and employee. Blades, *Employment at Will vs Individual Freedom: On Limiting the Abusive Exercise of Employer Power,* 67 Colum L Rev 1404, 1417 (1967). Although many workers are now protected from arbitrary discharge by collective bargaining agreements and civil service regulations which provide that employment may be termi-

nated only for "just cause", the majority of the American work force operates under an employment "at will" relationship. Note, *Protecting At-Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith,* 93 Harv L Rev 1816 (1980).

Many legislatures and courts, however, have tempered the harshness of the "at will" relationship by developing public policy exceptions to the doctrine. Where legislatures and courts have identified specific grounds for termination as being repugnant to a clearly expressed public policy, the employer's absolute freedom to terminate the employment is circumscribed *pro tanto.* See Anno: 12 ALR4th 544, 548.

In Michigan several public policy exceptions have been engrafted onto the "at will" doctrine. Most often, the public policy articulation appears in an explicit legislative provision granting employees protection from discharge. For example, an employee may not be discharged on the basis of religion, race, color, national origin or sex, MCL 37.2701; MSA 3.548(701), because of a physical handicap, MCL 37.1602; MSA 3.550(602), or in retaliation for filing a complaint under the Michigan Occupational Safety and Health Act, MCL 408.1065; MSA 17.50(65). In these specific instances the policy of ensuring employee job security against an improperly motivated discharge curtails the employer's prerogative to terminate employment.

Additionally, the courts have shown some willingness to recognize a public policy exception despite the lack of a statutory provision explicitly guaranteeing employees protection from discharge. For example, in *Sventko v Kroger Co, supra,* the plaintiff alleged that she had been discharged

solely in retaliation for filing a lawful claim for workers' compensation. Although the workers' compensation act did not at that time specifically prohibit retaliatory discharges,[2] the Court nonetheless found that the act conferred upon the plaintiff a right to receive compensation. The Court reasoned that the well-recognized legislative policy underlying the workers' compensation act was an equitable compromise: employees exchanged their speculative tort suits arising out of work-related injuries for guaranteed and expeditiously provided financial and medical benefits; employers exchanged their unpredictable negligence liability for more certain statutory liability under the act. The *Sventko* Court found that the public policy expressed in this compromise would be contravened if employers were allowed to take advantage of their exemption from general liability and yet circumvent their statutorily imposed duty to provide benefits. Hence, plaintiff's allegation that she was discharged in retaliation for exercising the statutorily granted right to compensation benefits was found to state a cause of action.[3]

Additionally, the plight of employees forced to choose between their job and an employer's direction to act in violation of the law has been recognized. In *Trombetta v Detroit, T & I R Co,* 81 Mich

[2] The act was amended by 1981 PA 200 to prohibit discharges in retaliation for exercising rights established by the act. MCL 418.301(11); MSA 17.237(301)(11) now provides:

"A person shall not discharge an employee or in any manner discriminate against an employee because the employee filed a complaint or instituted or caused to be instituted a proceeding under or because of the exercise by the employee on behalf of himself or herself or others of a right afforded by this act."

[3] Protection against discharge in retaliation for the exercise of constitutional and statutory rights was also extended in *Pilarowski v Brown,* 76 Mich App 666; 257 NW2d 211 (1977) (employee wrongfully discharged for exercising right to free speech), and *Hrab v Hayes-Albion Corp,* 103 Mich App 90; 302 NW2d 606 (1981) (employee may not be fired for filing workers' compensation claim).

App 489, 496; 265 NW2d 385 (1978), for example, the plaintiff alleged that he was discharged ·for refusing to manipulate sampling results used for pollution control reports which were filed with the state pursuant to statute. Such tampering violated state law. MCL 323.10; MSA 3.529(1). The Court concluded that the plaintiff had· set forth a cause of action based on a public policy exception: "[i]t is without question that the public policy of this state does not condone attempts to violate its duly enacted laws". 81 Mich App 495.

In contrast, this Court was unable to find the contravention of "a clearly mandated public policy" in *Suchodolski v Michigan Consolidated Gas Co,* 412 Mich 692, 696; 316 NW2d 710 (1982). In that case the plaintiff alleged that he had been discharged in retaliation for reporting improper accounting practices and poor internal management of defendant public utility to his superiors. The plaintiff proffered two sources of public policy: the Code of Ethics of the Institute of Internal Auditors and the extensive regulations of the accounting systems of public utilities. This Court rejected both: the code of ethics of a private association is not a statement of public policy, and the regulation of the accounting system of a public utility does not (in contrast to the workers' compensation statute) confer rights on employees. Thus, the Court concluded that the plaintiff had failed to allege a public policy exception to the employment-at-will doctrine.[4]

---

[4] Of course, the public policy of a state is not easily defined, nor by any means static. Nor is it always precisely located in the laws and judicial opinions of the state. As the Court observed in *Skutt v Grand Rapids,* 275 Mich 258, 264-265; 266 NW 344 (1936):

" 'What is the meaning of "public policy?" A correct definition, at once concise and comprehensive, of the words "public policy", has not yet been formulated by our courts * * *. In substance, it may be said to be the community common sense and common conscience, extended

It becomes clear from this recitation of cases that the Court has acted with circumspection in carrying out public policy exceptions to the "at will" doctrine. Each recognized exception involves either an employee's exercise of a statutorily or constitutionally granted right or an employee's refusal to violate a law. Thus, each public policy exception is grounded on a clearly articulated, well-accepted public policy.

This close consideration of proffered public policy exceptions is essential, given the important competing interests at stake. An employer's ability to make and act upon independent assessments of an employee's abilities and job performance. as well as business needs is essential to the free-enterprise system. However, the Court is also cognizant that social conditions have changed since the development of the employment-at-will doctrine. As noted above, although a large sector of the work force is protected against discharge without just cause, the majority of today's work force does not enjoy the protection of a collective bargaining agreement or civil service regulation; such employees' integrity and job security remain at the whim of the employer under common law.

---

and applied throughout the State to matters of public morals, public health, public safety, public welfare and the like. It is that general and well-settled public opinion relating to man's plain, palpable duty to his fellow men, having due regard to all the circumstances of each particular relation and situation.

" 'Sometimes such public policy is declared by Constitution; sometimes by statute; sometimes by judicial decision. More often, however, it abides only in the customs and conventions of the people,—in their clear consciousness and conviction of what is naturally and inherently just and right between man and man. It regards the primary principles of equity and justice and is sometimes expressed under the title of social and industrial justice, as it is conceived by our body politic. When a course of conduct is cruel or shocking to the average man's conception of justice, such course of conduct must be held to be obviously contrary to public policy, though such policy has never been so written in the bond, whether it be Constitution, statute or decree of court.' " Quoting *Pittsburgh, C C & St L R Co v Kinney,* 95 Ohio St 64; 115 NE 505 (1918).

Of course, it is not this Court's function to legislate employee job security. Nonetheless, the employee does have an interest in protection from discharge based solely on refusal to act in an unlawful manner or attempt to exercise a statutorily or constitutionally conferred right. Likewise, society has an interest in ensuring that its laws and important public policies are not contravened. These interests can be equitably balanced by recognizing an action for retaliatory discharge only when important and concretely articulated public policies are contravened. See *Adler v American Standard Corp,* 291 Md 31; 432 A2d 464 (1981).

### III

We must evaluate plaintiff's allegations in light of this review of the development of the public policy exceptions to the employment-at-will doctrine. Plaintiff asserts that he was fired because he missed work because of a work-related injury for which he had received workers' disability compensation benefits. He alleges that the defendant-employer had no right to fire him for this absence.

In evaluating the sufficiency of a complaint, all well-pleaded allegations are accepted as true, *Bielski v Wolverine Ins Co,* 379 Mich 280, 283; 150 NW2d 788 (1967), as well as any reasonable inferences that may be drawn therefrom. *Burnett v City of Adrian,* 414 Mich 448, 457; 326 NW2d 810 (1982) (MOODY, J., *concurring).*

Three elements of a cause of action based on a public policy exception to the employment-at-will rule may be distilled from the cases cited. First, plaintiff engaged in protected activity. The activity's protection may stem either from a constitutional or statutorily granted right or from an obligation favored by statutory policy. Second,

plaintiff was discharged. Third, a causal connection exists between the plaintiff's protected activity and the discharge. See Schlei & Grossman, *Employment Discrimination Law,* ch 15, p 534 (Washington, D.C.: Bureau of National Affairs, 1983).

While plaintiff has clearly alleged the second and third requirements, the crux of this case is whether plaintiff has alleged a protected activity. Plaintiff asserts that absence from work because of a work-related injury is protected activity. He cites *Sventko v Kroger Co, supra,* to support this position.

In *Sventko,* the plaintiff alleged that she had suffered a disabling injury while employed by the defendant, for which she filed a workers' compensation claim. While she was being treated for her disability she was notified of her discharge. The plaintiff alleged that she had been discharged solely in retaliation for filing a workers' compensation claim. The Court of Appeals held that the plaintiff had sufficiently alleged an exception to the common-law right of the employer to discharge the employee at will.

In the present case, the complaint alleges wrongful termination for "absence due to a work-related injury". Plaintiff does not specifically mention "retaliation for filing a workers' compensation claim".

Nonetheless, it would be myopic of this Court to narrowly define "retaliation for filing a workers' compensation claim" to exclude retaliation for absence because of a work-related injury.

The remedial purpose of the Worker's Disability Compensation Act is to compensate the victims of occupational disabilities. As mentioned above, the act embodies a compromise: employees exchanged their common-law tort actions against their em-

ployers for certain, expeditiously provided financial and medical benefits; employers exchanged their uncertain negligence liability for limited statutory liability. *Whetro v Awkerman,* 383 Mich 235, 242, 249; 174 NW2d 783 (1970); *Lahti v Fosterling,* 357 Mich 578, 585-586; 99 NW2d 490 (1959). In this way, industry absorbs the cost of compensating disabled workers and incorporates this cost into the production costs of the product. *Crilly v Ballou,* 353 Mich 303, 308-309; 91 NW2d 493 (1958). Thus, responsibility for workers' disability compensation has been placed squarely on the employers under the workers' compensation act.

In order to maintain the balance struck by the act, this Court and the Legislature have checked attempts of employers to shirk their duty to pay disability compensation. Thus, the Legislature enacted MCL 418.125; MSA 17.237(125), which prohibits an employer from "consistently discharg[ing] employees within the minimum time specified in this chapter and replac[ing] such discharged employees without a work stoppage". The statute establishes the presumption that such conduct is intended "to evade the provisions of this act" and imposes misdemeanor sanction. See also MCL 418.301(11); MSA 17.237(301)(11) (prohibiting retaliatory discharge for filing a workers' compensation claim). Likewise, in *Bower v Whitehall Leather Co,* 412 Mich 172, 193; 312 NW2d 640 (1981), this Court refused to allow an employer to terminate an employee's benefits when the employee reasonably refused an offer of favored work. These few examples demonstrate the sustained efforts of the courts and Legislature to enforce the quid pro quo, schema of the workers' compensation act.

In light of this recognized and often-affirmed

protective policy, the employers' expansive right to terminate an employment at will is properly and necessarily circumscribed. If an employer may discharge an employee with impunity in retaliation for seeking to exercise his rights under the workers' compensation act, he is able to evade his statutory duty to provide compensation while retaining immunity from tort suit. Such action clearly contravenes the public policy of the state.

However, no less violation occurs when an employer creates an atmosphere of reprisal which chills the employees' exercise of their rights under the act. If an employee may be discharged for an absence because of a work-related disability for which the employee may receive compensation, the employee will be reluctant to jeopardize his job security by filing a workers' compensation claim in conjunction with taking time off to attend to a disability. Such a practice effectively hampers an employee's right to workers' compensation and thus contravenes public policy.

Of course, termination on the basis of absence because of a work-related disability is a more subtle form of discrimination than that addressed in *Sventko.* The employer who brazenly threatens an employee with termination if he files a workers' compensation claim openly defies the statute. Nonetheless, employees must be protected from both subtle and blatant infringements on their statutorily granted rights.

Thus we find that plaintiff's allegation that he was fired because of an absence due to a work-related injury constitutes a cause of action as a public policy exception to the employment-at-will rule. The holding in this case, however, is in no way meant to curtail the employer's option of asserting, as an affirmative defense, the existence of a just cause for dismissal.

In recognizing this cause of action, we are guided by the experience of our sister states.

In New York, the Legislature and judiciary have been wrestling for more than ten years with the problem of discharge based on absence because of a work-related disability. In 1973, the Legislature enacted Workmen's Compensation Law, § 120, which prohibited discharge or discrimination of an employee for filing a workers' compensation claim.[5] In *In the Matter of Griffin,* 80 AD2d 689; 436 NYS2d 441, 442 (1981), an appellate court held that a discharge "triggered" by an employee's absence because of injuries sustained in a work-related accident violated the statute. The court explained:

"A contrary conclusion would tend to discourage employees who have received warnings concerning absenteeism from reporting work-related injuries and seeking medical attention and compensation."

See also *In the Matter of Lo Dolce,* 77 AD2d 697; 429 NYS2d 505 (1980).

In addition to interpreting the retaliatory discharge statute to include termination for absences because of work-related injuries, the appellate court in *Lo Dolce* rejected as irrelevant evidence that the employer had followed its policy of discharging employees because of excessive absenteeism. This holding led to criticism that the courts had eliminated the requirement of a causal connection between the protected activity and the discharge.[6]

---

[5] Of course, in Michigan this cause of action was initially recognized judicially *(Sventko v Kroger Co, supra)* rather than by statute. Nonetheless, the underlying policy is the same.

[6] DiLorenzo, *Workers' Compensation Discrimination in New York: Is It Really Lo Dolce Vita?* 54 NYS B J 220, 225 (1982) ("the decisions create a rule of law which prohibits employers from introducing

In response to these cases, the Legislature amended § 120 in 1983. Under the current statute, a violation of § 120 cannot be found if the employer has a valid reason to discharge or discriminate against the employee.

In California, the Supreme Court also interpreted a statute which prohibited discharge in retaliation for filing a workers' compensation claim to permit a cause of action for wrongful discharge based upon absence because of a work-related injury. *Judson Steel Corp v Workers' Compensation Appeals Board,* 22 Cal 3d 658; 150 Cal Rptr 250; 586 P2d 564 (1978). The court relied on the broad policy statement of the act which declared: "there should not be discrimination against workers who are injured in the course and scope of their employment". Cal Labor Code, § 132a. The court found that this policy could only be effectuated if employers were prohibited from discharging employees absent from their jobs as a consequence of a work-related injury. 22 Cal 3d 668. The court added:

"[W]e emphasize that our present holding in no way mandates that an employer retain all employees who sustain injuries on the job. * * * Section 132a does not compel an employer to ignore the realities of doing business by 'reemploying' unqualified employees or employees for whom positions are no longer available." 22 Cal 3d 667.

Finally, in Oregon, an employee's right to be rehired after an absence because of a compensable injury was established by statute. In pertinent part, Or Rev Stat, § 659.415 states:

contrary evidence and totally insulates an employee from discharge for absenteeism due to a compensable injury or disability").

"A worker who has sustained a compensable injury shall be reinstated by the worker's employer to the worker's former position of employment upon demand for such reinstatement, provided that the position is available and the worker is not disabled from performing the duties of such position."

In construing this statute, the Oregon Supreme Court noted: "nothing in [this act] prevents an employer from discharging a worker for just cause". *Vaughn v Pacific Northwest Bell Telephone Co,* 289 Or 73, 79-80; 611 P2d 281 (1980).

Thus, in each of these states, and now in Michigan, the employee's right to sue for wrongful discharge is carefully circumscribed by the employer's right to discharge employees for "just cause". In this way both the employee's interest in exercising his right under the workers' compensation act and the employer's right to exercise his business judgment in the selection and retention of employees are protected.[7]

## IV

Additionally, defendant argues that the exclusive remedy provision of the workers' compensation act bars plaintiff's present claim. This argument was implicitly rejected in *Sventko, supra,* and *Suchodolski, supra;* we explicitly reject it here.

The exclusive remedy provision, MCL 418.131; MSA 17.237(131) states:

"The right to the recovery of benefits as provided in

[7] We are not unmindful that recognition of plaintiff's cause of action may give rise to further issues, *e.g.,* computation of damages. However, at this time, the Court has not been presented with such questions. We therefore decline to address possible future areas of controversy without the benefit of concretely developed facts and the advocacy of the parties' attorneys.

this act shall be the employee's exclusive remedy against the employer."

Defendant argues that "the cause of damages claimed all flow from the fact that plaintiff suffered a compensable personal injury for which workers' compensation benefits are recoverable". This argument misperceives the nature of plaintiff's claim.

Plaintiff's action focuses not on his receipt *vel non* of compensation benefits, but on the employer's attempt to avoid his statutory duty under the act through intentional retaliatory action. The workers' compensation act was not intended to insulate employers from independent actions totally divorced from any physical or mental disability arising out of or in the course of employment. *Milton v Oakland County,* 50 Mich App 279, 283; 213 NW2d 250 (1973); *Moore v Federal Department Stores, Inc,* 33 Mich App 556; 190 NW2d 262 (1971); 2A Larson, Workmen's Compensation Law, § 68.10. Accord, *Kelsay v Motorola, Inc,* 74 Ill 2d 172, 183-184; 384 NE2d 353 (1979).

V

Thus we would hold that an employee's allegation that he has been terminated because of absence from work due to a work-related injury sets forth a public policy exception to the employment-at-will doctrine. Plaintiff's complaint sufficiently pleads a cause of action to withstand a motion for summary judgment. This action is not barred by the exclusive remedy provision of the Worker's Disability Compensation Act.

The judgment of the Court of Appeals should therefore be affirmed.