**Julie WINKLEY, Plaintiff,**

v.

**BRISTOL–MYERS SQUIBB COMPANY, Defendant.**

**No. 91–CV–10381–BC.**

United States District Court, E.D. Michigan, N.D.

June 23, 1992.

Haskell Shelton, Midland, Mich., for plaintiff.

Beverly Hall Burns, Claudia Roberts Ellman, Miller, Canfield, Paddock & Stone, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

CHURCHILL, District Judge.

The defendant's motion to dismiss Count IV of the plaintiff's complaint for failure to state a claim and the plaintiff's motion for summary judgment of liability upon Count IV of the plaintiff's complaint were taken under advisement at the conclusion of oral argument on May 20, 1992.

For reasons stated herein, it is the opinion of the Court that the defendant is entitled to dismissal of Count IV for failure to state a claim.[1]

## I.

### The Complaint

The plaintiff, Julie Winkley, alleges that she became an employee of Bristol–Myers as a sales person and that her employment was involuntarily terminated on August 2, 1991. She alleges that her termination was wrongful and seeks injunctive relief and damages.

Her complaint is divided into counts. Counts I, II and III allege breach of implied contract. Count IV alleges "Retaliatory Discharge."

The allegations relevant to Count IV may be summarized as follows.

Charles Johnson was plaintiff's immediate supervisor. Steven Ross was a Region Sales Manager for Bristol–Myers. Tension concerning plaintiff's work performance developed between plaintiff and Johnson.

On July 3, 1991, a meeting was held between the plaintiff, Johnson and Ross. The meeting was unsatisfactory from plaintiff's point of view.

Another conference was scheduled on July 19, 1991. The plaintiff "assumed that it was a meeting relating once more to the alleged concerns about her inadequacies as a sales person, and one which could ultimately result in discharge or disciplinary proceedings. being initiated." The plaintiff retained an attorney to accompany her and to assist her in effectively presenting her concerns to company management. Ross was notified that plaintiff intended to bring an attorney to the meeting.

The meeting was to take place at the Holiday Inn in Flint, Michigan. On July 19, 1991, Jeffrey Dahl[2] and Ross met with the plaintiff and her attorney in the lobby of the motel. Dahl and Ross announced that the meeting would not take place as scheduled because of plaintiff's insistence upon the presence of an attorney. After the meeting she was terminated for insubordination for refusal to attend a meeting with management persons without the presence of an attorney.

The last sentence of paragraph 37 in the complaint identifies the issue raised by the motions with respect to Count IV:

1. Evidence concerning the relevant factual allegations was presented to the Court in support of and in opposition to the motion for summary judgment. If the defendant's motion to dismiss was to be denied, the defendant would be hard pressed to avoid a summary judgment of liability in the plaintiff's favor. It is unnecessary, however, for the Court to summarize the evidence in this opinion.

2. Jeffrey Dahl was not identified in the complaint. This omission has not influenced the Court's opinion.

The termination of Julie Winkley from employment by Bristol–Myers Squibb Company under the circumstances was contrary to public policy of the State of Michigan which recognizes every citizen's right to representation by an attorney and constituted a retaliatory discharge for merely exercising a legitimate right.

## II.

### The Public Policy Exception

The plaintiff does not concede that she was an employee at-will. It is her position in this suit that there were contractual limitations upon the defendant's right to terminate her employment. Her theory of recovery under Count IV, however, does not depend upon the existence of such contractual limitations. For the purpose of ruling on the defendant's motion to dismiss Count IV, it may be assumed that she will be unable to prove that her status was something other than an at-will employee and that, generally, her employment could be terminated at any time for any reason, or for no reason.

The parties each recognize that there are specific statutory limitations upon the right of an employer to discharge employees. An employee may not be discharged on the basis of religion, race, color, national origin or sex (MCL 37.2701), because of physical handicap (MCL 37.1602) or in retaliation for filing a complaint under Michigan Occupational Safety and Health Act (MCL 408.-1065). See also, MCL 15.362, The Whistleblowers' Protection Act.

Apart from such statutes there is a judicially created public policy exception to an employer's right to fire an employee.

The leading Michigan cases recognizing the judicially created exception are Sventko v. The Kroger Co., 69 Mich.App. 644, 245 N.W.2d 151 (1976), Trombetta v. Detroit, T & I R Co., 81 Mich.App. 489, 265 N.W.2d 385 (1978), Suchodolski v. Michigan Consolidated Gas Co., 412 Mich. 692, 316 N.W.2d 710 (1982), and Clifford v. Cactus Drilling Corp., 419 Mich. 356, 353 N.W.2d 469 (1984).

In Sventko, the plaintiff alleged that she had been discharged for filing a lawful claim for worker's compensation. The workers' compensation act did not specifically prohibit retaliatory discharges, but the act did confer upon the plaintiff a right to receive compensation. The court drew two legal conclusions. It concluded that an employee at-will has a claim for damages if the reasons for the discharge violate public policy. It also concluded that it would be contrary to the public policy expressed in the statute for the defendant employer to discharge the plaintiff in retaliation for doing something she had a statutory right to do; that is, for filing a worker's compensation claim. Combining these conclusions, it was held that the plaintiff's complaint stated a claim. In Sventko, the public policy that justified application of the public policy exception which the court created was found in a statute regulating the relationship between employers and employees.

In Trombetta, the statute from which the public policy was found had nothing to do with the relationship between employers and employees. The court held that it would have been impermissible to discharge an employee for refusing to manipulate a pollution control report that was required by state statute.

In Suchodolski and Clifford, the Michigan Supreme Court, while refusing to apply the exception to the facts of those cases, recognized Sventko and Trombetta as the law of the state. The unanimous opinion in Suchodolski states that the public policy must be clearly mandated. The dissent in Clifford states that the public policy exception must be grounded on a clearly articulated, well accepted public policy.

Two Federal cases following Michigan law and applying the exception are Wiskotoni v. Michigan National Bank, 716 F.2d 378 (6th Cir.1983) and Pratt v. Brown Machine Co., 855 F.2d 1225 (6th Cir.1988).

In Wiskotoni, the employee was fired because he appeared under subpoena before a state grand jury. Wiskotoni is significantly different from Trombetta. In Trombetta, the employee refused to violate

the law. In *Wiskotoni*, the employee was fired because of something that someone else did; that is, issue a grand jury subpoena. *Wiskotoni* also makes clear that the doctrine does not change the contractual relationship between the at-will employer and the at-will employee. The action lies, not for breach of contract, but for the commission of a tort. These cases also demonstrate that an employee who may be discharged only for cause under *Toussaint v. Blue Cross & Blue Shield of Michigan*, 408 Mich. 579, 292 N.W.2d 880 (1980), may have an action for damages if they are terminated with or without good cause and if their termination is also for reasons which violate established public policy. *Pratt* demonstrates that an employee at-will may recover damages not only for wrongful discharge but also for the manner in which the discharge occurs. *Wiskotoni* and *Pratt* suggest that the scope of the public exception may not be fully defined.

The defendant argues that public policy must be found in constitutions or statutes. The plaintiff argues that public policy may also be found in and created by judicial decisions. The plaintiff cites a footnote on page 367 in the dissent in *Clifford* for the proposition that public policy may be found in natural law and that conduct may be so cruel or shocking that it must be held to be contrary to public policy though not prohibited by constitutional or statutory law.[3]

■ Most conduct that would fit such a description will violate or transgress the policy underlying one or more statutes. *In any event, in the Court's opinion, discharging an employee for refusal to attend a meeting with management personnel without bringing an attorney falls far short of the kind of conduct which would justify the extension of the public policy exception to a new situation without reliance on constitutional or statutory law.*

Count IV does not allege that she was fired for refusing to violate a law or for complying with one. If Count IV states a claim, it is because she had a right to be accompanied by counsel at the meeting with her employer's representatives. Such right must be found, if at all, in constitutional or statutory law.

III.

*Application of the Exception*

The plaintiff argues that the defendant's conduct denied plaintiff of the constitutional right of association.

■ The plaintiff's argument is unsound. The guaranties of the First Amendment run only against the federal government, and not private interference. By incorporation into the Fourteenth Amendment, these guaranties also run against the state. *Murphy v. Mount Carmel High School*, 543 F.2d 1189, 1193 (7th Cir.1976). The right of freedom of association can be violated only by state action, as distinguished from private action. *Fallis v. Dunbar*, 532 F.2d 1061 (6th Cir.1976).

■ The plaintiff also brings to the Court's attention provisions in the Michigan Constitution guaranteeing the right to counsel in civil litigation and in criminal prosecutions. MCL 600.1430 provides that a suitor in any court of the state has a right to prosecute or defend his suit, either in person or by an attorney.[4]

The plaintiff cites several statutes in which the right to counsel in specific situation is established.

MCL 750.519 provides that under certain circumstances railroad employees are entitled to a hearing at which they are represented by counsel.

---

3. The requirements for judicial recognition of public policy are in reality not this stringent. The creation of the public policy exception by the court in *Sventko*, as distinguished from its application to the facts of the case, is an example of the recognition or creation of public policy by courts without reliance on constitutional or statutory law. *See* Chief Judge Danhof's dissent in *Sventko*.

4. The Court is not concerned with a claim that an at-will employee was discharged because she consulted an attorney concerning her right to sue her employer.

The Michigan Consumer Protection Act, MCL 445.907, provides that persons subpoenaed to appear before the Attorney General may appear with counsel.

Michigan's Labor Mediation Act recognizes the right to collective bargaining through representatives. MCL 423.8.

The Michigan Whistleblowers' Act extends protection to an employee if someone acts on the employee's behalf in reporting a violation of law. MCL 15.362.

*None of the constitutional provisions or statutes cited by counsel give rise to a reasonable inference that there is a public policy in Michigan that an individual employee in the private sector has a right to be accompanied by counsel during a confrontational situation with her employer.*

The Court simply cannot find that the reasons for Winkley's discharge as described in Count IV of her complaint violate public policy. If she was an employee at-will, she has no judicially enforceable remedy for her discharge. Count IV must be dismissed.

An appropriate order will be entered.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNT IV

In accordance with the Memorandum Opinion entered this date,

The plaintiff's motion for summary judgment of liability upon Count IV of the plaintiff's complaint is DENIED.

The defendant's motion to dismiss Count IV of the plaintiff's complaint for failure to state a claim is GRANTED.