# STATE OF MICHIGAN

# COURT OF APPEALS

SCOTT STEFFY,

Plaintiff-Appellee,

v

THE BOARD OF HOSPITAL MANAGERS OF
HURLEY MEDICAL CENTER, also known as
HURLEY HOSPITAL, also known as HURLEY
MEDICAL CENTER, STEVE SITAR, and CLIFF
HOOKER,

Defendants-Appellants.

UNPUBLISHED
November 21, 2017

No. 333945
Genesee Circuit Court
LC No. 15-104946-CZ

Before: BECKERING, P.J., and O'BRIEN and CAMERON, JJ.

PER CURIAM.

Defendants, the Board of Hospital Managers of Hurley Medical Center, also known as
Hurley Hospital, also known as Hurley Medical Center (HMC), and its employees, Steve Sitar
and Cliff Hooker (referred to collectively as defendants), appeal by leave granted[1] an order
denying their motion for summary disposition in this action brought pursuant to the
Whistleblowers' Protection Act (WPA), MCL 15.362. We reverse.

On appeal, defendants argue that the trial court erred in denying their motion for
summary disposition because plaintiff, Scott Steffy, failed to show that he engaged in protected
activity pursuant to the WPA, and because plaintiff's public policy claim fails as he is not an at-
will employee. We agree.

Defendants moved for summary disposition pursuant to MCR 2.116(C)(10). This Court
reviews a motion for summary disposition de novo. *Gorman v American Honda Motor Co, Inc*,
302 Mich App 113, 115; 839 NW2d 223 (2013). We review only the evidence that was
presented at the time the trial court made its decision on the motion. *Id*. at 120. A motion for
summary disposition under MCR 2.116(C)(10) challenges the factual sufficiency of a plaintiff's

---

[1] *Steffy v Bd of Hosp Managers of Hurley Med Ctr*, unpublished order of the Court of Appeals,
entered September 23, 2016 (Docket No. 333945).

-1-

claim, and the trial court considers the evidence in the light most favorable to the nonmoving party. *Id*. at 115. Summary disposition is proper under MCR 2.116(C)(10) if " 'there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law.' " *Id*. at 116 (citation omitted). A genuine issue of material fact exists " 'when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ.' " *Id*. (citation omitted).

## I. PROTECTED ACTIVITY UNDER THE WPA

The trial court erred when it denied defendants' motion for summary disposition because there is no genuine issue of material fact that plaintiff failed to establish a prima facie case of a violation of the WPA because he did not demonstrate that he engaged in protected activity.

The relevant provision of the WPA provides:

> An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action. [MCL 15.362.]

To establish a prima facie case under this provision of the WPA, the plaintiff must demonstrate that "(1) the plaintiff was engaged in protected activity as defined by the act, (2) the plaintiff was discharged or discriminated against, and (3) a causal connection exists between the protected activity and the discharge or adverse employment action." *Shaw v Ecorse*, 283 Mich App 1, 8; 770 NW2d 31 (2009), quoting *West v Gen Motors Corp*, 469 Mich 177, 183-184; 665 NW2d 468 (2003) (quotation marks omitted). The only element of the prima facie case that defendants challenge on appeal is whether plaintiff was engaged in protected activity. "Protected activity" pursuant to the statute includes "(1) reporting to a public body a violation of a law, regulation, or rule, (2) being about to report such a violation to a public body, or (3) being asked by a public body to participate in an investigation." *Ernsting v Ave Maria College*, 274 Mich App 506, 510; 736 NW2d 574 (2007).

Plaintiff claims that he engaged in protected activity when he told Angela Dent, the dispatcher, that her request to exit HMC property and assist a nearby traffic accident violated HMC rules. Plaintiff claims he reported these violations when he told Dent, "That's City's job," "That sounds like it's PD, ma'am," and "That's 911 property." Defendants argue that plaintiff did not engage in protected activity because he failed to produce evidence that assisting a police department with a traffic accident was a violation of any written policy or procedure. We agree with defendants that plaintiff did not engage in protected activity.

Plaintiff has offered no evidence of what law, rule, or regulation promulgated pursuant to the law of this state that was allegedly violated by defendants. There is none cited to or attached

to his original complaint. Sitar, who is the director of environmental health, safety, and security, testified that there is no rule or regulation regarding public safety officers (PSOs) staying on HMC premises. Rather, the collective bargaining agreement (CBA) requires that all PSOs respond to dispatch calls, and they can later file a grievance. The arbitration opinion and award that was issued regarding the grievance of plaintiff's termination provides that in all of the documents the arbitrator reviewed, including the CBA, there was no mention of off-campus duties. Regarding off-campus duties of PSOs, the arbitrator noted:

> Even Dispatcher Dent was uncertain as to a PSO's off campus assignment when she asked Supervisor Hooker if it was "okay" to make such a dispatch. While I agree with Director Sitar that there are other actions that a PSO would be expected to perform, that expectation has to be measured against a PSO's lack of police credentials, traffic authority, or first responder qualifications. Moreover, it must be viewed here as responsibilities *not anywhere codified under any Hospital policy or even verbally communicated*.

The arbitrator's investigation into plaintiff's claims did not yield any written rule or policy precluding plaintiff from leaving HMC premises pursuant to his duties as a PSO in response to a dispatch call. Plaintiff could not recall the exact rule he claims was violated when he was deposed, and could not recall what article of the CBA he claimed to have told Hooker was violated, even though he was familiar with the CBA as the union president. In addition, plaintiff has gone off HMC premises in the past to accident scenes. Plaintiff testified that he has left HMC property while he was on duty to fill the patrol vehicle with gas or get keys made. Plaintiff did not offer any evidence of what law, rule, or regulation was violated, but rather, claims that an informal, unwritten, internal department policy was violated. Therefore, there is no genuine issue of material fact regarding whether plaintiff engaged in protected activity because there is no evidence of the law, rule, or regulation that plaintiff claims was violated.

There is one document titled "Hurley Medical Center Department of Public Safety Operational Policy and Procedures" within the lower court record that provides:

> It shall be the policy of the Department of Public Safety to routinely extend its activities only to the general boundaries of Grand Traverse (on the east), Fifth Avenue (on the south), Prospect Street (on the west), and 8th Avenue/Mackin Road (on the north.) . . . Pursuit beyond these boundaries requires clear authorization from the on duty supervisor.
>
> * * *
>
> When an officer reaches the outer boundary of the pursuit perimeter, **it is the responsibility of the officer to stop the pursuit**. Permission to continue beyond this boundary is dependent on the circumstances, and clear authorization from the on duty supervisor or charge officer. Authorization will only be given in situations where a clear and present danger of serious personal injury exists.

It appears from the motion hearing transcript that this document was provided to the trial court at the hearing. At the hearing, defense counsel relied on this document to argue that this policy

does not provide that PSOs cannot be ordered off HMC property. Plaintiff's counsel pointed out to the court that the "reviewed" date on the document, "6/22/2015," is from after this litigation began, and that plaintiff and Frank Felder, another PSO, both testified at their depositions that they had never seen this document before. According to plaintiff's counsel, this document was not marked as an exhibit at plaintiff's or Felder's depositions. This document was not attached as an exhibit to defendants' motion for summary disposition, or to plaintiff's response. Nor was it attached as an exhibit to plaintiff or defendants' briefs on appeal. Thus, it is unclear when this document was created, and if or when this policy and procedure were ever implemented. However, plaintiff's counsel asserted at the motion hearing that plaintiff and Felder both testified that they had never seen this document, further supporting the conclusion that plaintiff offered no evidence of a law, rule, or regulation that was violated in order to establish a prima facie case of a WPA violation.

Assuming that the policy constituted a valid and enforceable rule within the parameters of MCL 15.362, plaintiff still has not shown that he reported a violation or suspected violation of the rule. While he told the dispatcher that it was not his responsibility to respond to the traffic accident, he did not violate the rule, nor was there ever a suspected violation of the rule. At most, there could have been a future violation, but our Supreme Court has held that the reporting "of a suspected planned or future violation of a law is not encompassed within the protections provided by MCL 15.362." *Pace v Edel-Harrelson*, 499 Mich 1, 8-9; 878 NW2d 784 (2016). Plaintiff did not report that another PSO violated the rule by leaving the premises, or that plaintiff suspected a PSO would violate the rule. Instead, plaintiff personally refused to leave the premises and told the dispatcher that it was not his job to respond to the traffic accident; thus, there was no violation or suspected violation of the rule. For that reason, plaintiff did not engage in a protected activity, and the WPA does not apply to the circumstances underlying this case.

Plaintiff also asserts that he engaged in protected activity because he reported that going to the accident scene was police work in violation of MCL 750.215(1)(a). This statute provides that "[a]n individual who is not a peace officer or medical examiner shall not . . . [p]erform the duties of a peace officer or a medical examiner." MCL 750.215(1)(a). Defendants assert in their reply brief that the dispatch call requesting plaintiff to check on the scene of an accident is not equivalent to having plaintiff perform the duties of a peace officer or medical examiner. We agree.

This statute is typically violated when an individual impersonates a police officer in order to commit a crime. See *People v Ridley*, 142 Mich App 129, 130; 369 NW2d 274 (1985). Here, Dent merely requested that plaintiff "check out" the accident scene, and see if any help was needed or to block off traffic until police arrived. Plaintiff told dispatch that the accident was the responsibility of the city police department. However, the record reflects that plaintiff had responded to a similar scene in the past at a nearby hospital. Additionally, defendant Cliff Hooker informed Dent that there was no problem with plaintiff responding to the scene of the accident, and told plaintiff to see if any assistance was needed until the police arrived. The evidence does not demonstrate that the dispatch call was to have defendant perform the duties of a peace officer or a medical examiner. In addition, there is evidence that as a PSO, plaintiff was qualified to block off traffic with the vehicle he was driving while on duty, considering he did this at a similar scene off HMC property on a prior occasion. Finally, as previously stated, plaintiff neither violated this statute nor was he suspected of violating the statute. At most, there

was a possible future violation, but a future violation does not fall under MCL 15.362. *Pace*, 499 Mich at 8-9.

## II. PUBLIC POLICY

Defendants argue that plaintiff's public policy claim fails because he is a just-cause employee, and the public policy doctrine is an exception to wrongful discharge claims by at-will employees only. We agree.

"Michigan law generally presumes that employment relationships are terminable at the will of either party." *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 523; 854 NW2d 152 (2014). But an exception to the at-will employment doctrine exists " 'based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable.' " *Id.*, quoting *Suchodolski v Mich Consol Gas Co*, 412 Mich 692, 695; 316 NW2d 710 (1982). "Most often these proscriptions are found in explicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty." *Suchodolski*, 412 Mich at 695. There are three "public policy" exceptions to the general rule of at-will employment—an employer may not terminate an employee for "exercising a right guaranteed by law, executing a duty required by law, or refraining from violating the law." *Landin*, 305 Mich App at 526.

Pursuant to *Suchodolski*, an action claiming that a termination is in violation of public policy is an exception to the general rule that at-will employees cannot sue based on the termination of their employment. *Suchodolski*, 412 Mich at 695. Thus, defendants argue that when an employee has a just-cause employment relationship, rather than an at-will relationship, the employee cannot bring a claim for wrongful termination based on a public policy argument. Defendants rely on two unpublished cases wherein this Court did not apply the public policy exception to just-cause employees.[2] There have been many other cases where our Supreme Court and this Court concluded that the public policy exception for wrongful discharge claims only arise in at-will employment relationships. See *Phillips v Butterball Farms Co (After Second Remand)*, 448 Mich 239; 531 NW2d 144 (1995); *Clifford v Cactus Drilling Corp*, 419 Mich 356, 360; 353 NW2d 469 (1984), citing *Sventko v Kroger Co*, 69 Mich App 644; 245 NW2d 151 (1976); *Prysak v R L Polk Co*, 193 Mich App 1, 9; 483 NW2d 629 (1992).

The CBA governing plaintiff's employment is not included in the lower court file in full. However, plaintiff and Sitar both testified that plaintiff's employment was governed by a CBA that provides the terms and conditions of employment. Plaintiff was the union president when he was terminated and testified that he was well-acquainted with the provisions of the CBA. Sitar testified that the CBA included a provision providing plaintiff with a grievance process to

---

[2] *Gliwa v County of Lenawee*, unpublished opinion per curiam of the Court of Appeals issued May 27, 2014 (Docket Nos. 313958, 313966, 313967, 314034); and *Manczak v City of Bay City*, unpublished opinion per curiam of the Court of Appeals, issued March 27, 1998 (Docket No. 199395). Unpublished opinions are not binding under the rule of stare decisis. MCR 7.215(C)(1).

resolve disputes. Moreover, the arbitration opinion and award issued regarding plaintiff's termination cites Article 3 of the CBA, titled "Management Rights," which provides:

> 2.      The Medical Center retains the sole right to discipline and discharge Employees for *just cause*, provided that in the exercise of this right, it will not act in violation of this Agreement. Complaints raised by permanent (non-probationary Employees) that the Medical Center has violated this paragraph may be taken up through the grievance procedure.

This evidence demonstrates that plaintiff was a just-cause, rather than an at-will, employee of HMC. But *Suchodolski* and this Court's interpretation of the public policy exception applies only to at-will employees. Because he is a just-cause employee, plaintiff cannot maintain a public policy claim for the discharge. There is no genuine issue of material fact, and the trial court erred in denying defendants' motion for summary disposition.

Reversed and remanded for entry of an order granting summary disposition in favor of defendants consistent with this opinion. We do not retain jurisdiction.


/s/ Colleen A. O'Brien
/s/ Thomas C. Cameron