SUCHODOLSKI v MICHIGAN CONSOLIDATED GAS COMPANY

Docket No. 64822. Argued April 7, 1981 (Calendar No. 4).—Decided
March 2, 1982.

Arthur L. Suchodolski brought an action against his former
employer, the Michigan Consolidated Gas Company, for wrong-
ful discharge from employment. The complaint was in six
counts, one of which alleged age discrimination, and another of
which alleged that his discharge was contrary to public policy
because it was in retaliation for his attempts to bring improper
accounting and other practices of his employer corporation to
the attention of his superiors. The Wayne Circuit Court, John
D. O'Hair, J., granted summary judgment for the defendant on
all six counts. The Court of Appeals, D. C. Riley, P.J., and R. B.
Burns and D. E. Holbrook, Jr., JJ., reversed as to the count
alleging age discrimination and affirmed as to the rest in an
unpublished per curiam opinion (Docket Nos. 78-4417, 44157).
The plaintiff appeals as to the count alleging that his discharge
was against public policy.

In a unanimous opinion per curiam, the Supreme Court *held:*

This case involves only a corporate management dispute and
lacks the kind of violation of a clearly mandated public policy
that would support an action for retaliatory discharge.

1. Courts have recognized that some grounds for discharging
an employee are so contrary to public policy as to be actiona-
ble. Most often the proscription is found in explicit legislative
statements protecting employees who act in accordance with a
statutory right or duty. Occasionally a sufficient legislative
policy has been found to imply a cause of action for wrongful
discharge even in the absence of an explicit prohibition, as
when the discharge is for failure or refusal to violate a law, or
for the exercise of a right conferred by legislative enactment.

2. In this case the plaintiff relies on two sources to establish
"public policy": the Code of Ethics of the Institute of Internal
Auditors, and the extensive regulation of the accounting sys-
tems of public utilities by the Public Service Commission,
maintaining that the internal accounting practices about which
he complained could have interfered with the commission's
performance of its functions. The code of ethics of a private

association does not establish public policy. Nor is the regulation of public utilities sufficient to sustain a cause of action; the regulation of their accounting systems is not, as is the workers' compensation statute, directed toward conferring rights on employees. The plaintiff does not claim that his discharge arose from refusal to falsify reports or documents required by the Public Service Commission.

The judgment of the Court of Appeals is affirmed.

*Donnelly & Associates, P.C.* (by *Timothy G. Hagan),* for plaintiff.

*Dykema, Gossett, Spencer, Goodnow & Trigg* (by *Seth M. Lloyd* and *Richard L. Hurford)* for defendant.

PER CURIAM. At issue in this appeal is whether the circuit court properly granted summary judgment as to the plaintiff's claim that his discharge from his employment with Michigan Consolidated Gas Company was improper as contrary to public policy. The Court of Appeals affirmed the judgment for the defendant. We agree that summary judgment was appropriate and affirm.

I

The plaintiff began working for Michigan Consolidated Gas Company in September, 1972, as a senior auditor. He was discharged in January, 1976, and brought this action in 1978, stating various theories of recovery in a six-count complaint. Only one count is relevant to the present appeal.[1] Count V of the complaint said, in part:

[1] The circuit court entered judgment for the defendant on all six counts. The Court of Appeals reversed the decision as to the count claiming age discrimination on the authority of our decision in *Strachan v Mutual Aid & Neighborhood Club, Inc,* 407 Mich 928 (1979), *rev'g* 81 Mich App 165; 265 NW2d 66 (1978), but affirmed as to the other five counts.

The plaintiff has not appealed the judgment as to four of the counts.

"34. That plaintiff, in the course of his employment for defendant corporation, had discovered and reported poor internal management of defendant corporation.

"35. That plaintiff was terminated for attempting to report and correct such questionable procedures as the shifting of losses from appliance sales to the rate payers, uncollectable accounts receivable and the selling of automobiles and office equipment to employees of defendant corporation for very low prices.

"36. That defendant's discharge of plaintiff for attempting to report and correct the aforementioned practices was retaliatory and against the public policy of this state."

In affirming the summary judgment, the Court of Appeals noted that a "public policy" exception has developed to the general rule that either party to an employment contract for an indefinite term may terminate it at any time for any reason. The Court discussed at length the decision in *Sventko v Kroger Co,* 69 Mich App 644; 245 NW2d 151 (1976). In that case, the plaintiff claimed that she was discharged because she had filed a claim for workers' compensation benefits. The Court held that this stated a claim for which relief could be granted.

However, in an unpublished per curiam opinion, the Court of Appeals found *Sventko* inapplicable:

"We think that the *Sventko* case is factually distinguishable from the present case which involves a corporate management dispute and no clear mandate of public policy."

We granted leave to appeal.

## II

In general, in the absence of a contractual basis

for holding otherwise, either party to an employment contract for an indefinite term may terminate it at any time for any, or no, reason. See generally *Toussaint v Blue Cross & Blue Shield of Michigan,* 408 Mich 579; 292 NW2d 880 (1980). However, an exception has been recognized to that rule, based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable. Most often these proscriptions are found in explicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty.[2]

The courts have also occasionally found sufficient legislative expression of policy to imply a cause of action for wrongful termination even in the absence of an explicit prohibition on retaliatory discharges. Such a cause of action has been found to be implied where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment. Thus, in *Trombetta v Detroit, T & I R Co,* 81 Mich App 489; 265 NW2d 385 (1978), the Court said that it would have been impermissible to discharge an employee for refusing to falsify pollution control reports that were required to be filed with the state.[3]

In addition, the courts have found implied a

[2] *E.g.,* MCL 37.2701; MSA 3.548(701) (Elliott-Larsen Civil Rights Act); MCL 37.1602; MSA 3.550(602) (Handicappers' Civil Rights Act); MCL 408.1065; MSA 17.50(65) (Occupational Safety and Health Act); MCL 15.362; MSA 17.428(2) (The Whistleblowers' Protection Act).

[3] See also *Petermann v International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Local 396,* 174 Cal App 2d 184; 344 P2d 25 (1959) (discharge because employee refused to give false testimony before legislative committee); *McNulty v Borden, Inc,* 474 F Supp 1111 (ED Pa, 1979) (discharge for refusal to participate in illegal price-fixing scheme).

prohibition on retaliatory discharges when the reason for a discharge was the employee's exercise of a right conferred by a well-established legislative enactment. See, *e.g., Sventko v Kroger Co, supra; Hrab v Hayes-Albion Corp,* 103 Mich App 90; 302 NW2d 606 (1981). Both cases involved allegations of discharges in retaliation for having filed workers' compensation claims.[4]

The plaintiff relies on two sources to establish that a "public policy" would be violated by allowing his discharge to stand. First, he argues that the Code of Ethics of the Institute of Internal Auditors is such an expression of public policy. Second, he points to the extensive regulation of the accounting systems of public utilities by the Public Service Commission. *E.g.,* MCL 483.113; MSA 22.1323. He maintains that his complaints about the internal accounting practices of the defendant, which he alleges led to his discharge, related to matters that could have interfered with the Public Service Commission's ability to perform its regulatory functions.

We agree with the Court of Appeals that this case involves only a corporate management dispute and lacks the kind of violation of a clearly mandated public policy that would support an action for retaliatory discharge. The code of ethics of a private association does not establish public policy. Nor is the regulation of public utilities sufficient to sustain the plaintiff's action. The regulation of the accounting systems of utilities is not, as is the workers' compensation statute, directed

---

[4] Most of the cases in other jurisdictions also involve allegations of discharge in retaliation for filing workers' compensation claims. *E.g., Frampton v Central Indiana Gas Co,* 260 Ind 249; 297 NE2d 425 (1973); *Kelsay v Motorola, Inc,* 74 Ill 2d 172; 384 NE2d 353 (1979).

at conferring rights on the employees. Finally, we note that the plaintiff does not claim that his discharge arose from his refusal to falsify reports or documents required by the Public Service Commission.

The judgment of the Court of Appeals is affirmed.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.