**Gloria M. GRANT and Jeffrey
R. Grant, Plaintiffs,**

v.

**DEAN WITTER REYNOLDS,
INC., Defendant.**

No. 96–CV–60278–AA.

United States District Court,
E.D. Michigan,
Southern Division.

Nov. 7, 1996.

Peter W. Macuga, II, Macuga, Swartz & Liddle, Detroit, MI, for Plaintiffs.

Mark R. Werder, Norman D. Hawkins, Honigman, Miller, Schwartz & Cohn, Detroit, MI, for Defendant.

*ORDER DENYING PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT AND GRANTING DEFENDANT'S MOTION TO DISMISS*

HACKETT, District Judge.

On June 25, 1996, defendant removed the above-captioned case from the Wayne County Circuit Court based upon diversity of citizenship. The complaint alleges that plaintiffs were constructively discharged from their employment at defendant Dean Witter Reynolds, Inc. (Dean Witter). Subsequently, defendant filed a motion to dismiss or, in the alternative, to compel arbitration and stay these proceedings. In apparent response to defendant's motion, plaintiffs filed a motion for leave to amend complaint, which defendant opposes. For the following reasons, plaintiffs' motion for leave to amend complaint shall be denied, and defendant's motion to dismiss shall be granted.

## I. FACTS

Plaintiff Gloria Grant was employed as an administrative assistant and later as an account executive with defendant Dean Witter from approximately 1988 to 1995. Plaintiff Jeffrey Grant was employed as an account executive at Dean Witter from approximately 1994 to 1995. While employed at Dean Witter, plaintiffs were parties to a partnership agreement with another Dean Witter broker, Douglas Osborne, for the purpose of carrying on as co-owners of a business for profit. The partnership agreement reflects that the partnership was drawing commissions from Dean Witter, which then became partnership assets.

Plaintiffs contend that Osborne breached the partnership agreement by failing to contribute equally to the growth of the partnership, and that on May 8, 1995, the partnership was dissolved pursuant to Osborne's demands in violation of the partnership agreement. As a result of the dissolution of the partnership, the assets were to be equitably distributed in accordance with the partnership agreement. Plaintiffs allege that defendant interfered with the distribution of the partnership assets which resulted in an inequitable distribution of the assets to plaintiffs.

On June 28, 1995, plaintiffs brought suit against Osborne for breach of the partnership agreement. Plaintiffs maintain that they were forced to resign from Dean Witter shortly after bringing suit against Osborne because defendant, outraged at plaintiffs' lawsuit, made their working conditions intolerable.

Accordingly, plaintiffs initiated the case at bar against defendant, originally alleging only constructive discharge as their basis for relief. Plaintiffs claim that they had reason to believe they would not be discharged without good cause, but that "[t]he inequitable distribution of the partnership assets, and Defendant's blatant interference with the partnership agreement was unreasonable, and caused a hostile work environment for Plaintiffs which caused Plaintiffs' resignation."

Thereafter, defendant filed a motion to dismiss plaintiffs' complaint or, in the alternative, to compel arbitration and stay these proceedings. Defendant argues that constructive discharge is not a cause of action under Michigan law; it is a defense that standing alone does not state a claim upon which relief can be granted. Furthermore, defendant explains that plaintiffs cannot state a claim for constructive discharge be-

cause they were at-will employees; as such, Dean Witter was entitled to discharge them at any time for any reason, so defendant seeks dismissal of plaintiffs' complaint.

Alternatively, defendant argues that the arbitration agreements between plaintiffs and Dean Witter require that plaintiffs' claims be compelled to arbitration and that these proceedings be stayed. The employment agreements signed by plaintiffs specifically require that any claims arising out of or relating to those agreements must be submitted to arbitration. Defendant contends that plaintiffs' claims relate to the circumstances of the termination of their employment contracts and clearly constitute claims "arising out of or relating to" their employment agreements.

Next, plaintiffs filed a motion for leave to amend their complaint. In addition to their constructive discharge claim, plaintiffs seek to add two more counts to the complaint, and a defendant who would destroy diversity. First, plaintiffs' proposed Count II is a claim of tortious interference with a contract against proposed defendant Raymond Basile, branch manager at Dean Witter. Plaintiffs allege that Basile instituted a breach of plaintiffs' contract with Osborne by inequitably distributing the partnership assets. Second, plaintiffs' proposed Count III is a claim for retaliatory discharge against Dean Witter and Basile. Plaintiffs allege that in retaliation for their suit against Osborne, which was the exercise of a statutorily conferred right, defendants made plaintiffs' working conditions so intolerable that they were forced to resign. Lastly, plaintiffs argue that their claims do not arise out of or relate to their employment agreements; rather, their claims arise from "Defendant's violation of public policy by making Plaintiffs' work environment so hostile once Plaintiffs brought suit against a co-worker, that Plaintiffs were compelled to resign."

Defendant Dean Witter opposes plaintiffs' motion for leave to file an amended complaint. Defendant urges the court to find that the proposed amended complaint would be futile, or that the entire matter is subject to arbitration.

## II. ANALYSIS

Regarding plaintiffs' motion to amend their complaint, the court notes that while "leave shall be freely given when justice so requires," Fed.R.Civ.P. 15(a), "a trial court need not grant leave to amend when the amendment would be futile." *Frank v. D'Ambrosi*, 4 F.3d 1378, 1386 (6th Cir.1993). In this case, plaintiffs' proposed amendments would be futile.

First, as to plaintiffs' claim of tortious interference with a contract, the elements of that tort are: (1) the existence of a contract; (2) a breach of the contract; and, (3) instigation, without justification, of the breach by the alleged tort-feasor. *Bonelli v. Volkswagen of Amer., Inc.*, 166 Mich.App. 483, 496, 421 N.W.2d 213, 219 (1988). In addition, a plaintiff has the burden to establish that the defendant's conduct caused a breach, disruption, or termination of the contract. *Bahr v. Miller Bros. Creamery*, 365 Mich. 415, 425, 112 N.W.2d 463, 468 (1961); *Hutton v. Roberts*, 182 Mich.App. 153, 161, 451 N.W.2d 536, 540 (1989).

Here, plaintiffs sufficiently allege the existence of their contract with Douglas Osborne, and Osborne's breach of the contract "by failing to contribute equally to the growth of the partnership." However, plaintiffs do not establish that defendants' conduct caused Osborne to breach the contract. Plaintiffs state:

15. [T]he partnership was dissolved pursuant to Osborne's demands in violation of the partnership agreement.

16. As a result of the dissolution of the partnership the assets were to be equitably distributed in accordance with the partnership agreement.

17. The Defendants interfered with the distribution of the partnership assets, resulting in an inequitable distribution of the assets to Plaintiffs.

. . . . .

19. Shortly after bringing suit against Douglas Osborne, Plaintiffs were forced to leave Dean Witter Reynolds, Inc. as a direct result of Plaintiffs [sic] suit against Osborne and Defendants [sic] tortious in-

terference with Plaintiffs [sic] partnership agreement.

According to plaintiffs' allegations, Osborne breached the partnership agreement prior to any interference by defendants when he refused to contribute equally to the partnership and demanded dissolution of the partnership. Upon dissolution, which resulted from Osborne's breach, the partnership assets were to be divided equally. It is at that point plaintiffs contend defendants interfered with their partnership agreement by inequitably distributing the assets. However, when defendants distributed the assets, Osborne's breach had already taken place. Thus, defendants' actions could not have instigated the breach. Accordingly, plaintiffs' tortious interference claim is without merit and thus futile.

■■■ Plaintiffs' proposed amended complaint also contains a claim of retaliatory discharge, in which plaintiffs allege they were discharged from Dean Witter for filing suit against Osborne. Although employment relationships are generally terminable at will, with or without cause, at any time for any or no reason, "an exception has been recognized to that rule, based on the principle that some grounds of discharging an employee are so contrary to public policy as to be actionable." *Suchodolski v. Michigan Consol. Gas Co.*, 412 Mich. 692, 695, 316 N.W.2d 710, 711 (1982). Michigan law has recognized a cause of action for retaliatory discharge in three specific circumstances: (1) where there exists an "explicit legislative statement[ ] prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty;" (2) where the alleged reason for discharge was the employee's "failure or refusal to violate a law in the course of employment;" or, (3) where "the reason for a discharge was the employee's exercise of a right conferred by a well-established legislative enactment." *Vagts v. Perry Drug Stores, Inc.*, 204 Mich.

App. 481, 484, 516 N.W.2d 102, 103 (1994). None of these circumstances· is present in this case.

■■ Plaintiffs claim that Dean Witter violated the third condition by discharging them in retaliation for exercising rights pursuant to a "well-established legislative enactment." In arguing that a "public policy" would be violated by allowing their discharge to stand, plaintiffs contend that they had "a statutorily conferred right to sue under the Michigan Partnership Act §§ 449.20–21, · [and that they] were subsequently discharged for exercising the right." However, the sections of the Michigan Partnership Act relied upon by plaintiffs as a source of public policy (M.C.L. §§ 449.20–21) are only general provisions explaining the duties of partners and are not directed at conferring any rights on employees.[1] Moreover, the Michigan Partnership Act does not establish any public policy. Therefore, this case lacks the kind of violation of a clearly mandated public policy that would support plaintiffs' proposed retaliatory discharge claim.

■■ Finally, plaintiffs' only remaining claim alleges constructive discharge. However, constructive discharge is not a cause of action under Michigan law; it is a defense. Thus, standing alone, constructive discharge does not state a claim upon which relief can be granted. The Michigan Court of Appeals clearly articulated this principle in *Vagts v. Perry Drug Stores*, 204 Mich.App. 481, 516 N.W.2d 102 (1994):

> [W]e also point out that constructive discharge is not in itself a cause of action, although it is routinely alleged as a separate count in complaints for wrongful discharge.... Rather, constructive discharge is a defense against the argument that no suit should lie in a specific case because the plaintiff left the job voluntarily.... Thus, an underlying cause of ac-

---

1. In *Suchodolski*, the Michigan Supreme Court suggested that the term "legislative enactment" does not encompass all statutes, but only statutes "directed at conferring rights on employees." 412 Mich. at 696–97, 316 N.W.2d at 712. In that case, the plaintiff alleged that his employer, a public utility company, discharged him for complaining about his employer's internal accounting practices. The Court held that he failed to state a claim for retaliatory discharge because, although his complaints related to the statutes authorizing extensive state regulation of the accounting systems of public utilities, "[t]he regulation of the accounting systems of utilities is not, as is the workers' compensation statute, directed at conferring rights on the employees." *Id.*

tion is needed where it is asserted that a plaintiff did not voluntarily resign but was instead constructively discharged.

*Id.* at 487, 516 N.W.2d at 104 (citations omitted); *see also Kroll v. Disney Store, Inc.,* 899 F.Supp. 344, 347 (E.D.Mich.1995). In this case, plaintiffs have no underlying cause of action, and their claim for constructive discharge must thus be dismissed.

### III. *CONCLUSION*

The court finds that plaintiffs' proposed amendments to the complaint would be futile. Therefore, plaintiffs' motion for leave to amend complaint hereby is DENIED. Furthermore, the court finds that the sole claim in plaintiffs' original complaint fails to state a claim upon which relief can be granted. Accordingly, defendant's motion to dismiss hereby is GRANTED.

SO ORDERED.