# STATE OF MICHIGAN

# COURT OF APPEALS

CHRISTINA A. SEVILLA,

Plaintiff-Appellant,

v

HEARTLAND HEALTH CARE CENTER-
HAMPTON d/b/a HEARTLAND-HAMPTON OF
BAY CITY, HCR MANORCARE SERVICES
LLC, HEARTLAND EMPLOYMENT
SERVICES, LLC, and JANIS NOWAK,

Defendants-Appellees.

UNPUBLISHED
June 28, 2016

No. 326521
Bay Circuit Court
LC No. 12-003848-CZ

Before: FORT HOOD, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

PER CURIAM.

Plaintiff appeals as of right from the order of the circuit court granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(10).[1] We affirm.

## I. FACTS

Plaintiff worked at the Bay City nursing home facility of defendant Heartland Health Care Center-Hampton, doing business as Heartland Hampton of Bay City, HCR Manorcare Services, LLC, and Heartland Employment Services, LLC (hereafter, referred to collectively as "Heartland"). Defendant Janis Nowak was the nursing home administrator or director of the facility. Plaintiff was hired in 1998 as a dietary aide and was later promoted to cook, the position she held until her termination on January 27, 2012. As a cook, plaintiff's duties included preparing "dietary supplements" for residents of the facility. Dietary supplements included items like cheese and crackers, sandwiches, and protein drinks, and were given to patients who needed extra calories or special nutrients based on the recommendation of a dietician to a patient's physician, who would then prescribe the supplement for the patient. When they prepared a

---

[1] Since the trial court relied on matters extraneous to the pleadings and expressly based its determination on a finding that there was no genuine issue of material fact, we reject plaintiff's assertion that summary disposition was premised on MCR 2.116(C)(8) (failure to state a claim).

-1-

supplement, the kitchen staff was to affix an adhesive label, which described the dietary supplement and listed the name and room number of the patient receiving the supplement.

According to plaintiff, when a supplement was not prepared for some reason (for instance, when a patient was absent from the facility for an evening), the unused label was thrown into the trash. Plaintiff claimed that beginning in August or September 2011, she began to find entire sheets of dietary supplement labels on the counter in the facility, thrown into the trash can, or in the dumpster outside the facility. Plaintiff suspected that a coworker, another cook at the facility, was not preparing supplements for patients because she found the labels after that cook's shift. Plaintiff claimed that she reminded the coworker on two or three occasions to prepare the supplements, and then began to collect labels when she continued to find them discarded or left on the counter, storing them in her vehicle. In September 2011, plaintiff informed her supervisor that she believed her coworker was not preparing supplements, and in December 2011 she told a nurse of her suspicions; however, no action was apparently taken as a result of her reports. Plaintiff claimed that when she learned that personnel from Heartland's corporate office were scheduled to visit the facility on January 24, 2012, she decided to turn the labels over to them. She further claimed that also in January 2012, she received a letter accompanying her paycheck from the chief executive officer of Heartland relating the company's anti-retaliation policy for reporting wrongdoing by a coworker and decided to tell Nowak about the labels.

Before reporting to Nowak, however, plaintiff showed the labels to the facility's administrative director of nursing services (hereafter, referred to as the "nursing director") on or about January 18, 2012. The nursing director asked plaintiff to give the labels to her. Plaintiff refused, explaining that she planned to give them to Heartland corporate personnel. On or about January 19, plaintiff's supervisor asked her to turn over the labels, and told plaintiff that by keeping the labels in her care she was in violation of HIPAA (the Health Insurance Portability and Accountability Act, 42 USC 1320d *et seq.*). Plaintiff still refused to turn over the labels, and was later confronted by Nowak. Nowak informed plaintiff that she was violating HIPAA and had committed a potentially terminable offense by refusing a supervisor's direct order to turn over the labels. Plaintiff then turned over the labels to Nowak, who immediately suspended her, and plaintiff was later fired by her supervisor at Nowak's direction.

## II. PROCEDURAL POSTURE

Plaintiff filed a complaint alleging that her termination violated public policy pursuant to the Public Health Code ("PHC"), MCL 333.1101 *et seq.*, and specifically, MCL 333.21771. Plaintiff further alleged that Nowak had intentionally interfered with plaintiff's advantageous business relationship with Heartland, and that Nowak's reliance on HIPAA to justify plaintiff's termination was a pretext "to cover up her own negligence" and that of other staff members. Defendants filed for summary disposition pursuant to MCR 2.116(C)(10), asserting that there was no genuine issue of material fact as to whether plaintiff was protected by MCL 333.21771, and that plaintiff had not produced any evidence to show that Nowak had tortiously interfered with her employment.

The circuit court granted defendants' motion, noting that apart from "limited exceptions, [plaintiff] was terminable at-will" and that her public policy argument failed because she could

not show that she took action under the statute that she relied upon in her complaint, MCL 333.21771. The court found that because plaintiff had failed to *immediately* report her suspicions of wrongdoing to the nursing home administrator or nursing director, as specifically articulated by the statute, and had instead waited approximately five months to report to them, plaintiff could not claim public policy protection.

Plaintiff filed a motion for reconsideration, arguing that under *Suchodolski v Michigan Consol Gas Co*, 412 Mich 692, 695-696; 316 NW2d 710 (1982), and *Landin v Healthsource Saginaw*, *Inc*, 305 Mich App 519; 854 NW2d 152 (2014), which was decided after the court granted summary disposition, she had a valid public policy claim. Plaintiff also argued that defendants had relied upon a recent amendment to MCL 333.21771, rather than the version of that statute that was in effect during the events at issue, and that the court had erred by relying on the amended version. The court granted plaintiff's motion and reversed its earlier decision based on its conclusion that defendants had based their motion for summary disposition on an incorrect version of the applicable statute and had presented "new arguments" at the hearing.

Defendants filed a second motion for summary disposition, which the court granted. The court concluded that although plaintiff had relied on MCL 333.21771, under the plain language of the statute in effect, she was required to " 'immediately report' any act of abuse, mistreatment, or neglect prohibited by this Section to the nursing home administrator or nursing director. There is no genuine issue of material fact that she did not do so." This appeal followed.

## III. STATUTORY BASIS OF PLAINTIFF'S CLAIM

Plaintiff argues first that the court erred by analyzing her claim as though it were a "whistleblower" action pursuant to MCL 333.21771. This assertion is not accurate. As an initial matter, the Whistleblower Protection Act ("WPA"), MCL 15.361 *et seq.*, is incorporated in section 20180[2] of the PHC, but is not incorporated in section 21771, the provision on which plaintiff relied in her complaint. No whistleblower action arises under MCL 333.21771. The circuit court's opinion and order does not make any reference to the WPA, but rather discusses plaintiff's compliance (or lack thereof) with MCL 333.21771, the statute she cited repeatedly in her complaint. Plaintiff did not cite MCL 333.20180 in her complaint, nor did she argue before the circuit court that her claim arose under this provision of the statute. Moreover, the facts do not indicate that this section is applicable to this case because plaintiff did not allege that she

---

[2] MCL 333.20180(1) provides in relevant part as follows:

> A person employed by or under contract to a health facility or agency or any other person acting in good faith who makes a report or complaint including, but not limited to, a report or complaint of a violation of this article or a rule promulgated under this article; who assists in originating, investigating, or preparing a report or complaint; or who assists the department in carrying out its duties under this article is immune from civil or criminal liability that might otherwise be incurred and is protected under the whistleblowers' protection act, 1980 PA 469, MCL 15.361 to 15.369.

made a report to a public body or that she was subject to civil or criminal liability for doing so.[3] Thus, based on the record, plaintiff's claim that the circuit court erred by dismissing her case based on the WPA is entirely without merit. Rather, the court properly dismissed plaintiff's claim for failure to demonstrate that a genuine issue of material fact existed as to whether she complied with the requirements of MCL 333.21771 in effect at the time of her actions.

MCL 333.21771(1) provides that "[a] licensee, nursing home administrator, or employee of a nursing home shall not physically, mentally, or emotionally abuse, mistreat, or harmfully neglect a patient." In January 2012[4], MCL 333.21771 further provided, in relevant part, as follows:

> (2) A nursing home employee who becomes aware of an act prohibited by this section *immediately shall report* the matter to the nursing home administrator or nursing director. A nursing home administrator or nursing director who becomes aware of an act prohibited by this section immediately shall report the matter by telephone to the department of public health, which in turn shall notify the department of social services.

> (6) A nursing home employee, licensee, or nursing home administrator shall not evict, harass, dismiss, or retaliate against a patient, a patient's representative, or an employee who makes a report under this section. [See 2012 PA 174 (emphasis added).]

The circuit court concluded that in order to invoke the protection of the anti-retaliation provision of subsection (6), plaintiff had to show that she complied with subsection (2) by immediately reporting any act of abuse, mistreatment, or neglect to the nursing home administrator or nursing director. The court noted that although plaintiff began to suspect that her coworker was failing to provide dietary supplements to patients in August 2011, she did not tell Nowak or the nursing director about her suspicion until January 18 or 19, 2012, a delay of approximately five months. When viewed in the light most favorable to plaintiff, the court's finding that plaintiff "failed to report immediately to the persons designated in the statute" was not error. See *Maiden v Rozwood*, 461 Mich 109, 120-121; 597 NW2d 817 (1999).

## IV. PUBLIC POLICY

Plaintiff argues next that the circuit court's decision was contrary to public policy because she should not have been deprived of the protection of the anti-retaliation provisions of the PHC, MCL 333.20176a(1)(a) and MCL 333.21771(6), based on her failure to comply with the specific reporting requirements of the latter provision. According to plaintiff, because she

---

[3] See MCL 15.362.

[4] MCL 333.21771 was amended effective June 19, 2012. Unless otherwise indicated, the version of the statute in effect prior to the amendment (at the time of the offense, in January 2012) is referred to in this report.

did not have a valid whistleblower claim or other claim under the PHC, she was entitled to bring a public policy claim. This is a misstatement of the applicable law. We agree with the circuit court that a public policy claim must "be rooted in a statute. It's not just something the courts make up." The court did not err in finding that plaintiff could not claim public policy protection based on the PHC because she did not follow its requirements.

In *Suchodolski*, our Supreme Court held that there were three exceptions to the general rule that "either party to an employment contract for an indefinite term may terminate it at any time for any, or no, reason . . . based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable." *Suchodolski*, 412 Mich at 695. We have recognized these exceptions as follows:

> (1) explicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty (e.g., the Civil Rights Act, MCL 37.2701; the Whistleblowers' Protection Act, MCL 15.362; the Persons With Disabilities Civil Rights Act, MCL 37.1602), (2) where the alleged reason for the discharge was the failure or refusal of the employee to violate a law in the course of employment (e.g., refusal to falsify pollution reports; refusal to give false testimony before a legislative committee; refusal to participate in a price-fixing scheme), and (3) where the reason for the discharge was the employee's exercise of a right conferred by a well-established legislative enactment (e.g., retaliation for filing workers' compensation claims). [*Landin*, 305 Mich App 524, citing *Suchodolski*, 412 Mich at 695-696.]

Additionally, we noted that,

> [o]ur Supreme Court's enumeration [in *Suchodolski*] of 'public policies' that might forbid termination of at-will employees was not phrased as if it was an exhaustive list. This does not mean, however, that trial courts have unfettered discretion or authority to determine what may constitute sound public policy exceptions to the at-will employment doctrine. [*Id.* at 525 (citation and internal quotation marks omitted).]

Rather,

> [i]n identifying the boundaries of public policy, we believe that the focus of the judiciary must ultimately be upon the policies that, in fact, have been adopted by the public through our various legal processes, and are reflected in our state and federal constitutions, our statutes, and the common law. See *Twin City Pipe Line Co v Harding Glass Co*, 283 US 353, 357; 51 S Ct 476; 75 L Ed 1112 (1931). The public policy of Michigan is *not* merely the equivalent of the personal preferences of a majority of this Court; rather, such a policy must ultimately be clearly rooted in the law. [*Id.*, quoting *Terrien v Zwit*, 467 Mich 56, 66-67; 648 NW2d 602 (2002).]

Plaintiff contends that there are a "plethora" of provisions in the PHC that could provide the "explicit legislative statements prohibiting discharge" required by the first and third

exceptions stated in *Suchodolski*. However, plaintiff cites only two provisions of the statute in her brief on appeal, MCL 333.21771 and MCL 333.20176a, and relied only on the former provision in her complaint. As discussed, plaintiff did not meet the requirements of MCL 333.21771. Because plaintiff also did not present a valid claim under section 20176a, her argument that *Suchodolski* supports her claim lacks merit.

MCL 333.20176a protects from retaliation employees of health facilities or agencies who report "the malpractice of a health professional." MCL 333.20176a(1)(a). Although the statute does not define "malpractice," it is defined commonly as "[a]n instance of negligence or incompetence on the part of a professional," or as the failure of a doctor "to exercise the degree of care and skill that a physician or surgeon of the same medical specialty would use under similar circumstances." *Black's Law Dictionary* (7th ed). Although plaintiff argues on appeal that this provision should apply where a patient "does not get their supplements," we are not persuaded by this argument. Plaintiff's coworker was a cook, not a health professional. Although we recognize that the supplements were prescribed by health professionals, assuming that the patients did not receive their supplements, plaintiff has not alleged that the dieticians or physicians who prescribed the supplements were aware of this potential neglect or were somehow responsible for it. Thus, even if plaintiff had raised section 20176a in her complaint, she has not demonstrated that her coworker's actions constituted malpractice by a health professional. Plaintiff's argument that she had a valid public policy claim under *Suchodolski* based on sections 20176a and 21771 of the PHC is not persuasive.

Finally, plaintiff argues that she was not bound to comply with MCL 333.21771 in order to present a valid public policy claim because she presented a prima facie case of unlawful retaliation. This assertion is not accurate. In *Landin*, this Court stated,

> [t]o establish a prima facie case of unlawful retaliation a plaintiff must show (1) that he engaged in a protected activity, (2) that this was known by the defendant, (3) that the defendant took an employment action adverse to the plaintiff, and (4) that there was a causal connection between the protected activity and the adverse employment action. *Landin*, 305 Mich App at 533, citing *DeFlaviis v Lord & Taylor, Inc.*, 223 Mich App 432, 436; 566 NW2d 661 (1997).

In the instant case, plaintiff has not shown that she engaged in a protected activity. As discussed, plaintiff failed to timely report the alleged misconduct of her coworker to the nursing home administrator or nursing director, as required by the statute. Thus, she did not engage in a protected activity under MCL 333.21771(2). Although plaintiff claims that she engaged in protected activity "under prongs one and three of *Suchodolski*," this argument is not persuasive, because, as discussed, pursuant to *Suchodolski*, plaintiff was required to rely upon an explicit legislative statement or well-established legislative enactment in order to claim an exception to the general rule regarding termination of at-will employment relationship. Because plaintiff has not shown that she engaged in protected activity pursuant to valid authority, she has not shown that she presented a prima facie case of unlawful retaliation.

## V. AFFIRMATIVE DEFENSE

Plaintiff argues that defendants failed to raise an affirmative defense in their first responsive pleading, and that the trial court erred by considering it. According to plaintiff, defendants' argument that plaintiff failed to "immediately report" the alleged neglect of her coworker "was in the form of an affirmative defense that must have been pled and proven." This assertion is incorrect. As discussed, under the statute relied upon by plaintiff in her complaint, she was required to immediately report her coworker's alleged misconduct to Nowak or the nursing director in order to claim its protection. MCL 333.21771(2). Thus, defendant's argument was not an affirmative defense, but, rather, merely pointed out plaintiff's statutory obligation. See MCR 2.111(F)(3)(b), (c). Plaintiff is not entitled to relief on this basis.

Affirmed.

/s/ Karen M. Fort Hood
/s/ Amy Ronayne Krause
/s/ Michael F. Gadola