NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0111n.06

Case No. 20-1764

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 02, 2021
DEBORAH S. HUNT, Clerk

CHERYL FRITZE,                        )
                                      )
        Plaintiff-Appellant,          )
                                      )
                                      )        ON APPEAL FROM THE UNITED
v.                                    )        STATES DISTRICT COURT FOR
                                      )        THE WESTERN DISTRICT OF
NEXSTAR BROADCASTING, INC.,           )        MICHIGAN
                                      )
        Defendant-Appellee.           )

BEFORE: GILMAN, GIBBONS, and SUTTON, Circuit Judges.

SUTTON, Circuit Judge. Cheryl Fritze worked as an editor for a broadcast news station. The station fired her for creating a disruptive work environment. That prompted this lawsuit, in which Fritze claims that the station violated the Michigan Whistleblowers' Protection Act by punishing her for complaining about inadequate investigations of sexual harassment. The district court ruled as a matter of law that Fritze failed to satisfy the elements of a claim under the Act. We agree and affirm.

I.

For decades, local television station WLNS has broadcast in Lansing, Michigan. Jamshid Sardar has served as the station's News Director for 12 years. In 2013, Sardar offered, and Cheryl Fritze accepted, a job as the newsroom's Assignment Editor.

In that capacity, Fritze managed the newsroom's workflow, "assign[ing] reporters and photographers to the daily duties" of putting stories together. R.41-4 at 5. Fritze described her first year at the station as "pleasant." *Id.* at 7.

After that, tension between her and Sardar emerged. Private disagreements became public ones as their feud "spilled out on[to] the newsroom floor." *Id.* at 17. On one occasion, after objecting to Sardar's decision to run a story, Fritze proclaimed in the middle of the newsroom that she was "done," and walked out of the room. *Id.*

An ownership change added more tension. Early in 2017, Nexstar Media Broadcasting acquired WLNS. Fritze was not happy about the change. In a highly public setting, she described Nexstar as a company in which "all they do is come in and chop off all managers." R.41-13 at 20.

In the spring of 2017, Fritze filed a complaint with human resources alleging that Sardar "had engaged in an inappropriate sexual relationship with another female employee of WLNS" in violation of company policy. R.48 at 5. Management started an investigation. The allegation was never substantiated, but Sardar received a directive to review the company's workplace policies.

A WLNS employee complained to human resources that the feud intensified after the investigation, claiming that Fritze "hate[d]" Sardar and was "out to get" him. R.41-13 at 38. Nexstar opened a new inquiry into Fritze and Sardar's relationship, asking a neutral investigator to take a "fresh" look at the situation. R.41-24 at 3. After interviewing and surveying employees who worked directly with Fritze, the investigator recommended that Fritze "be immediately removed from WLNS" because she had "exhibited countless acts of insubordination" and had "issues taking direction from" Sardar. *Id.* at 3, 7.

Nexstar did not act on the recommendation, at least not immediately. It instead appointed an "outside mediator who had no contacts with the news industry" to work with Fritze and Sardar. R.14-3 at 4. But that did not improve matters.

The station discharged Fritze in 2018.

Fritze filed this lawsuit in state court, alleging wrongful discharge in violation of the Michigan Whistleblowers' Protection Act. *See* Mich. Comp. Law § 15.361 *et seq.* Nexstar removed the case to federal court on diversity grounds. Fritze claimed that the company fired her for raising concerns about inadequate investigations of sexual harassment of other employees. The district court granted Nexstar summary judgment, reasoning that Fritze failed to satisfy several elements of a claim under the statute.

## II.

The Michigan Whistleblowers' Protection Act prohibits employers from firing an employee "because the employee . . . reports or is about to report . . . a violation or a suspected violation of a law . . . to a public body." Mich. Comp. Laws § 15.362. To obtain relief, a claimant must show (1) that she engaged in protected activity by reporting a violation of law to a public body, (2) that the company discharged or otherwise punished her, and (3) that the protected activity caused the employer's action. *Wurtz v. Beecher Metro. Dist.*, 848 N.W.2d 121, 125–26 (Mich. 2014); *Debano-Griffin v. Lake County*, 828 N.W.2d 634, 638 (Mich. 2013).

Fritze's claim has several unfilled gaps. To resolve this appeal, we need to address just two—that she did not report a "violation of a law" and did not make a report to a "public body."

*Violation of a law*. Fritze did not report a "violation of a law," to start. Such a disclosure occurs when the employee makes "a charge of illegality against a person or entity" or tells "a public body pertinent information related to illegality." *Rivera v. SVRC Indus., Inc.*, 934 N.W.2d

286, 296 (Mich. Ct. App. 2019) (quotations omitted). An employer's failure to follow internal rules or procedures does not amount to a violation of law, *see Suchodolski v. Michigan Consol. Gas Co.*, 316 N.W.2d 710, 712 (Mich. 1982), unless the internal rule or regulation has been "promulgated pursuant to the law," *Henry v. City of Detroit*, 594 N.W.2d 107, 111 (Mich. Ct. App. 1999). A report that an employer failed to follow its own internal policies does not therefore ordinarily constitute a violation of law. *See Suchodolski*, 316 N.W.2d at 712.

Fritze stipulated that "she was never sexually harassed." R.48 at 5. Her complaint was that Nexstar "was not properly investigating instances of the sexual harassment of subordinate female employees and interns by their Nexstar managers." R.44-1 at 3. She also looked for ways she could "effectuate change at Nexstar (since Fritze indicated that internal reporting measures were not working)." *Id.* The "Nexstar Employee Guidebook" outlines the company's policy on sexual harassment. R.48 at 3. The policy prohibits discrimination because of race, sex, and age, among other categories, and it prohibits sexual harassment as well as retaliation against any employee for raising concerns about harassment. *Id.* The policy also directs employees subjected to harassment to report the conduct to (1) a supervisor, (2) human resources, or (3) a toll-free hotline. Any such report is entitled to a response from the company.

While it no doubt serves everyone's interests for a company to follow its workplace policies, a company's failure to do so does not by itself constitute a "violation of a law." The problem for Fritze is that Nexstar did not create its internal policies "pursuant to law of this state . . . or the United States." Mich. Comp. Laws § 15.362. It created them as a matter of company governance. That does not suffice under the Act. *See Suchodolski*, 316 N.W.2d at 712. Any other approach would mean that a complaint to a state agency, say the Michigan Department of Civil Rights, about a company's non-compliance with its own policies, as opposed to state

statutes or state regulations, would suffice to trigger liability under the Act. But that's not what the statute says or envisions as reporting a "violation of a law."

That Fritze was told she could "reach out to other female Nexstar employees to see what their experiences had been relating to Nexstar's conduct related to sexual harassment" does not alter this conclusion. R.44-1 at 3. She wanted help "connecting the dots across the country of the other women who were victims of sexual harassment at Nexstar stations." R.41-4 at 40. That may be a noble objective. But it does not amount to complaints about illegality.

*A public body.* Also missing from Fritze's case is a report to a "public body." Under the Act, a "public body" includes state and local governments, agencies, the courts, the executive branch, and any other Michigan "body" that "is created by state or local authority or which is primarily funded by or through state or local authority, or any member or employee of that body." Mich. Comp. Laws § 15.361(d)(iv)–(vi). Public bodies do not include private companies, meaning that a private employee's communication with her private employer is a "nonactionable communication." *Rivera*, 934 N.W.2d at 297; *see also Brown v. Mayor of Detroit*, 734 N.W.2d 514, 517 (Mich. 2007); *Koets v. Am. Legion, Dep't of Michigan*, No. 333347, 2017 WL 3397404, at *6 n.3 (Mich. Ct. App. Aug. 8, 2017); *Denney v. Dow Chem. Co.*, No. 294278, 2011 WL 92964, at *5 (Mich. Ct. App. Jan. 11, 2011); *Chang Lim v. Terumo Corp.*, No. 11-CV-12983, 2014 WL 1389067, at *7 (E.D. Mich. Apr. 9, 2014).

That means that Fritze's reports to Nexstar and its employees do not qualify as reports to a "public body." Nexstar and its affiliate WLNS are private corporations. Her coworkers were private, not government, employees. Internal reports of sexual harassment and workplace misconduct do not satisfy this element of the claim.

That Fritze spoke to an attorney, but did not hire him, does not fill this gap. A licensed and hired Michigan attorney, it is true, was treated as a "public body" by one Michigan intermediate court opinion. *McNeil-Marks v. Midmichigan Med. Ctr.-Gratiot*, 891 N.W.2d 528, 538 (Mich. Ct. App. 2016). Subsequent Michigan decisions appear to have cabined that decision. Not "all communications with attorneys," one has said, "categorically constitute reports to a public body." *McNeill-Marks v. MidMichigan Med. Ctr.-Gratiot*, No. 348987, 2020 WL 2610106, at *10 (Mich. Ct. App. May 21, 2020) (quotations omitted). Courts "must engage in a deeper analysis of the particular facts and circumstances" of the plaintiff's "communication" with the attorney to see if it meets the test. *Id.*; *Rivera*, 934 N.W.2d at 295. The analysis, another court has said, must include a search for "record evidence of an attorney-client relationship" or evidence that the attorney "perform[ed] specific legal work" for the plaintiff. *Newton v. Mariners Inn*, No. 332498, 2017 WL 5759949, at *7 (Mich. Ct. App. Nov. 28, 2017); *see also Shephard v. Benevis, LLC*, No. 350164, 2021 WL 70642, at *4 (Mich. Ct. App. Jan. 7, 2021); *Brooks v. Genesee County*, No. 330119, 2017 WL 2988838, at *3 (Mich. Ct. App. July 13, 2017); *Yurk v. Application Software Tech. Corp.*, No. 2:15-cv-13962, 2018 WL 453889, at *9 (E.D. Mich. Jan. 17, 2018).

Fritze's discussion with attorney David Mittleman does not qualify as a report to a "public body." Fritze had one meeting with Mittleman, and she did not retain his services or sign an "engagement letter[]" to hire him. R.41-4 at 35. Nor did Mittleman perform any legal work for Fritze. Even if an attorney in some settings might qualify as a public body under Michigan law, *McNeil-Marks*, 891 N.W.2d at 538, this relationship never materialized to that level.

That Mittleman suggested that Fritze contact other female Nexstar employees about their experience with sexual harassment at the company does not alter this conclusion. It remains undisputed that Mittleman never formed an attorney-client relationship with Fritze and never

performed any legal work on her behalf.  Even if he offered suggestions of this sort, that does not

make him a "public body."  *See Rivera*, 934 N.W.2d at 295.

We affirm.