*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

TAGHREED MEYOU,

        Plaintiff-Appellant,

v

THE KROGER COMPANY, THE KROGER
COMPANY OF MICHIGAN, and ARIEG YALDA,

        Defendants-Appellees.

UNPUBLISHED
November 20, 2025
11:25 AM

No. 369692
Oakland Circuit Court
LC No. 2022-196986-CD

Before: K. F. KELLY, P.J., and BORRELLO and CAMERON, JJ.

PER CURIAM.

In this wrongful-termination employment dispute, plaintiff appeals by right the trial court's order granting summary disposition in favor of defendants the Kroger Company, the Kroger Company of Michigan (Collectively, Kroger),[1] and Arieg Yalda. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

This case arises out of the termination of plaintiff's employment as a pharmacist at Kroger. Plaintiff began working in the pharmacy department at Kroger as a staff pharmacist and pharmacy co-manager in 2015. Plaintiff's offer of employment stated that her supervisor was defendant Yalda. Yalda was a pharmacy practice coordinator at Kroger. However, in her deposition, plaintiff testified that she did not report directly to anyone and that Sam Anderson was the pharmacy manager in charge of the pharmacy at the store where plaintiff worked.

Each employee in the pharmacy, upon logging into the computer system at the beginning of a shift, was assigned a unique bar code called a random daily access code (RDAC). RDAC credentials expired after approximately 12 or 13 hours, and an employee was assigned a new

---

[1] According to defendants' motion for summary disposition, the "correct name of the corporate defendants is The Kroger Co. of Michigan."

RDAC at the beginning of each new shift. Each time that an employee completed a task related to filling a certain prescription, that employee was required to scan the employee's RDAC before the prescription could continue to the next step in the process. Pharmacy employees were prohibited from sharing their RDAC credentials with other pharmacy employees.

On November 1, 2019, plaintiff was terminated from her employment. According to the termination letter addressed to plaintiff, she was terminated for cause after an investigation revealed that she had violated Kroger's policy regarding the sharing of RDAC credentials. Anderson was also terminated on the same day as plaintiff for the same offense of sharing his RDAC credentials in violation of company policy. Anderson was 42 years old, and plaintiff was approximately 48 or 49 years old. Relevant to the instant case, there was video evidence that employees were sharing RDAC credentials while plaintiff was working in the pharmacy and in close proximity. The record contains evidence that plaintiff, as the pharmacist in charge during her shift, was responsible for ensuring that the other employees working in the pharmacy had proper individual RDAC credentials and that employees without proper RDAC credentials were not working in the pharmacy.

On October 31, 2022, plaintiff initiated this action in a two-count complaint. In Count 1, plaintiff brought at age discrimination claim under the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101, *et seq.*, alleging that that she was wrongfully terminated from her employment based on her age and replaced with a younger employee. In Count 2, plaintiff alleged that she was discharged in retaliation for reporting her coworker's negligence and violations of law and that plaintiff's discharge was therefore against public policy. With respect to the allegations in Count 2, plaintiff testified in her deposition that she had reported various improper and negligent acts that Anderson had allegedly committed in the course of his work at the pharmacy.

The trial court granted defendants' motion for summary disposition and dismissed plaintiff's claims. Plaintiff now appeals.

## II. STANDARD OF REVIEW

"This Court reviews the grant or denial of summary disposition de novo to determine if the moving party is entitled to judgment as a matter of law." *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

Summary disposition is appropriate under MCR 2.116(C)(8) if the "opposing party has failed to state a claim on which relief can be granted." When considering a motion under MCR 2.116(C)(8), the trial court "must accept all factual allegations as true, deciding the motion on the pleadings alone," and the motion "may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 160; 934 NW2d 665 (2019).

Summary disposition is warranted under MCR 2.116(C)(10) if "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." On a motion under MCR 2.116(C)(10), the trial court "must consider all evidence submitted by the parties in the light most favorable to the party opposing the motion." *El-Khalil*, 504 Mich at 160. The motion may only be granted if there is no

genuine issue of material fact, which exists "when the record leaves open an issue upon which reasonable minds might differ." *Id*. (quotation marks and citation omitted).

## III. ANALYSIS

Plaintiff first argues that the trial court erred by dismissing her public policy claim.

"Michigan law generally presumes that employment relationships are terminable at the will of either party." *Landin v Healthsource Saginaw, Inc*, 305 Mich App 519, 523; 854 NW2d 152 (2014). "In general, in the absence of a contractual basis for holding otherwise, either party to an employment contract for an indefinite term may terminate it at any time for any, or no, reason." *Suchodolski v Michigan Consol Gas Co*, 412 Mich 692, 694-695; 316 NW2d 710 (1982). However, our Supreme Court has recognized that there exists an exception to this rule "based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable." *Id*. at 695. These grounds may be found where (1) there are "explicit legislative statements prohibiting the discharge, discipline, or other adverse treatment of employees who act in accordance with a statutory right or duty"; (2) an employee is discharged in retaliation for the employee's "failure or refusal to violate a law in the course of employment"; or (3) an employee is discharged for "the employee's exercise of a right conferred by a well-established legislative enactment." *Id*. at 695-696. Accord *Stegall v Resource Technology Corp*, 514 Mich 327, 340; 22 NW3d 410 (2024).

In support of her argument, plaintiff relies on *Landin*, in which this Court held as follows:

> It is well established that the purpose of the statutes regulating health care professionals, including those set forth in the Public Health Code (under which MCL 333.20176a falls), is to safeguard the public health and protect the public from incompetence, deception, and fraud. In enacting MCL 333.20176a, the Legislature clearly expressed a desire to further that policy by prohibiting retaliation against an employee who reports malpractice. And the right to report alleged acts of negligence (malpractice) is consistent with and implicit in the purposes of the Public Health Code and its statutory regulations governing health care professionals.

> For the same reason, exception (3) in *Suchodolski*, 412 Mich at 695-696, (where the reason for the discharge was the employee's exercise of a right conferred by well-established legislative enactment) could also apply to MCL 333.20176a. We recognize that the only situation to which (3) has been applied thus far is the termination of an employee in retaliation for filing a workers' compensation claim. In describing this exception, however, *Suchodolski* cited *Sventko v Kroger Co*, 69 Mich App 644; 245 NW2d 151 (1976), wherein a panel of this Court noted that the purpose of the Worker's Disability Compensation Act, as set forth in its title, was " 'to promote the welfare of the people of Michigan relating to the liability of employers for injuries or death sustained by their employees. The legislative policy is to provide financial and medical benefits to the victims of work-connected injuries in an efficient, dignified, and certain form.' " The *Sventko* Court held that "[d]iscouraging the fulfillment of this legislative policy by use of the most powerful

-3-

weapon at the disposal of the employer, termination of employment, is obviously against the public policy of our state."

> The workers' compensation statutes and MCL 333.20176a share the same underlying purpose—to promote the welfare of the people of Michigan as it concerns health and safety. While the workers' compensation statutes were admittedly enacted specifically in the context of protecting employees who are injured in the workplace, it could be argued that reporting malpractice in the context of a medical workplace would have even more of a direct impact on the health and welfare of our citizens and that the right to report alleged malpractice in one's workplace without fear of repercussion is of at least equal, if not of greater, significance than benefitting and protecting victims of work-related injuries. Those employed in the health and medical fields would be best situated to report alleged acts of malpractice to the benefit of the public as a whole. And, if employers in those fields are permitted to terminate employees who report the malpractice of coworkers or others, they, like employers in workers' compensation cases, would be given free rein to use the most powerful tool at their disposal to attempt to deflect their potential liability, but to the detriment of the public and in direct violation of the purpose of the Public Health Code and regulatory statutes governing the medical profession. Thus, because the statutory basis for plaintiff's public policy claim could support a public-policy-based wrongful discharge claim, the trial court did not err by denying defendant's motions for summary disposition. [*Landin*, 305 Mich App at 530-532 (some citations omitted; alteration in original).]

Plaintiff asserts that her allegation of unlawful retaliation for reporting purported malpractice by Anderson falls within the ambit of the public policy exception to the at-will employment doctrine. For analytic purposes, assuming plaintiff's position is valid, the establishment of a prima facie case of unlawful retaliation necessitates a demonstration of: (1) engagement in a protected activity by the plaintiff, (2) knowledge of this activity by the defendant, (3) an adverse employment action taken by the defendant against the plaintiff, and (4) a causal nexus linking the protected activity to the adverse employment action. *Id*. at 533.

Here, consideration of the fourth element is dispositive. Plaintiff claims that her complaints about Anderson's alleged misconduct constituted reports that Anderson was violating the Public Health Code, committing malpractice, and endangering the health and safety of Kroger's pharmacy customers. Accepting plaintiff's contentions as true solely for the purposes of this argument, plaintiff still must provide evidence that there was a causal connection between her reporting this misconduct to Kroger's management and plaintiff's discharge. Plaintiff does not provide any evidence to substantiate a causal connection beyond the mere temporal proximity of her reports to her termination. Furthermore, plaintiff appears to predominantly rely on her unverified claim that her termination must have occurred due to her reporting of Anderson's alleged negligence and misconduct. It remains unclear whether plaintiff possesses any basis for this belief other than her own speculation. *Id*.

"Summary disposition for the defendant is appropriate when a plaintiff cannot factually demonstrate a causal link between the protected activity and the adverse employment action." *West v Gen Motors Corp*, 469 Mich 177, 184; 665 NW2d 468 (2003). A mere "temporal

relationship, standing alone, does not demonstrate a causal connection between the protected activity and any adverse employment action." *Id*. at 186. Plaintiff thus cannot establish her retaliation-based public policy claim, and she has not demonstrated the trial court's decision granting summary disposition in favor of defendants was erroneous. *Id*.

Next, plaintiff argues that the trial court erred by dismissing her age discrimination claim under MCR 37.2202(1)(a),[2] which provides in relevant part as follows:

>(1) An employer shall not do any of the following:

>(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of . . . age . . . .

A plaintiff may establish discriminatory treatment in violation of the ELCRA through direct or indirect evidence. *Major v Village of Newberry*, 316 Mich App 527, 540; 892 NW2d 402 (2016). " 'Direct evidence,' in the context of a CRA claim, is 'evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.' " *Id*., quoting *Hazle v Ford Motor Co*, 464 Mich 456, 462; 628 NW2d 515 (2001).

In this case, plaintiff admits that she does not have direct evidence of age discrimination. "In a case where direct evidence is lacking, a plaintiff must establish a prima facie case of age discrimination by proving that (1) she was a member of the protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) she was replaced by a younger person." *Major*, 316 Mich App at 540-541 (quotation marks and citation omitted). "[O]nce a plaintiff establishes a prima facie case of discrimination, the defendant has the opportunity to articulate a legitimate, nondiscriminatory reason for its employment decision in an effort to rebut the presumption created by the plaintiff's prima facie case." *Hazle*, 464 Mich at 464. "The articulation requirement means that the defendant has the burden of producing evidence that its employment actions were taken for a legitimate, nondiscriminatory reason." *Id*. If this burden is satisfied, then "in order to survive a motion for summary disposition, the plaintiff must demonstrate that the evidence in the case, when construed in the plaintiff's favor, is sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action taken by the employer toward the plaintiff." *Id*. at 465 (quotation marks and citation omitted). Our Supreme Court explained that the inquiry at this stage

>is exactly the same as the ultimate factual inquiry made by the jury: whether consideration of a protected characteristic was a motivating factor, namely, whether it made a difference in the contested employment decision . . . . The only difference is that, for purposes of a motion for summary disposition or directed verdict, a plaintiff need only create a question of material fact upon which reasonable minds

---

[2] Although this statute has been amended since the trial court granted summary disposition in this case, the language relevant to the present case was not changed. See 2023 PA 6; 2023 PA 31.

could differ regarding whether *discrimination was a motivating factor* in the employer's decision. [*Id*. at 466 (emphasis added).]

Even presuming that plaintiff has established a prima facie case of age discrimination, she fails to identify any evidence that would demonstrate defendant's stated rationale for her termination—specifically, the violation of the RDAC policy—was a mere pretext for unlawful age discrimination. For instance, plaintiff does not reference any younger employee in a comparable role, possessing similar levels of oversight responsibility for other pharmacy staff at her location, who was not terminated for similar violations of the RDAC policy.

Plaintiff's assertion that "the pretextual nature of the proffered reason for her termination provides additional evidence of age discrimination" lacks substantiation. Her contention primarily challenges defendants' factual findings concerning her alleged breaches of the RDAC policy and claims that her age was the motivating factor behind her termination. However, she fails to provide any record evidence establishing a causal link between her age and the decision to terminate her employment; rather, her arguments consist of unsupported and speculative assertions.

To withstand a motion for summary disposition, a plaintiff must not only question the legitimacy of the employer's provided justification as pretextual but must also establish that this pretext is a cover for unlawful discrimination. *Hazle*, 464 Mich at 465-466, holding in relevant part that a mere demonstration that the employer's decision was erroneous or misguided is insufficient; the crucial determination rests on whether discriminatory intent influenced the employer's actions, rather than assessing the employer's overall intelligence or judgment.

Here, plaintiff has not fulfilled her evidentiary obligations, and her attempts to suggest that defendants did not adequately disprove her claim of pretext do not substitute for actual evidence demonstrating a discriminatory motive. Consequently, the trial court did not err in granting summary disposition in favor of the defendants regarding the plaintiff's age discrimination claim.

To the extent plaintiff attempts to raise additional evidentiary issues, these issues were not included in her statement of the questions presented. Therefore, these issues were not properly presented for this Court's review and need not be addressed. "Independent issues not raised in the statement of questions presented are not properly presented for appellate review" and need not be reviewed by this Court. *Bouverette v Westinghouse Electric Corp*, 245 Mich App 391, 404; 628 NW2d 86 (2001).

Affirmed. Defendants having prevailed are entitled to costs. MCR 7.219(A).

/s/ Kirsten Frank Kelly
/s/ Stephen L. Borrello
/s/ Thomas C. Cameron

-6-