*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MARK ZYBER,

　　　　　　Plaintiff-Appellant,

v

PATSY LOU BUICK GMC, INC., ALISHA
SCHRADER, LARRY WHITE, DONALD
WILLIAMSON, PATSY LOU CHEVROLET,
INC., and PATSY LOU WILLIAMSON
AUTOMOTIVE GROUP, INC.,

　　　　　　Defendants-Appellees.

UNPUBLISHED
August 15, 2019

No. 344628
Genesee Circuit Court
LC No. 16-108216-CZ

Before: LETICA, P.J., and M. J. KELLY and BOONSTRA, JJ.

PER CURIAM.

Plaintiff appeals by right the trial court's order granting summary disposition in favor of defendants under MCR 2.116(C)(10). We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

Plaintiff was employed as a salesperson for a car dealership (Patsy Lou Chevrolet). He sued defendants after his employment was terminated. The various corporate defendants are entities that comprise or are related to the dealership's business. The individual defendants are Donald Williamson (Williamson), the husband of Patsy Lou Williamson (the owner of Patsy Lou Chevrolet, Inc., and Patsy Lou Buick GMC, Inc.) and the dealership general manager; Larry White (White), the executive vice-president of Patsy Lou Chevrolet from 2008 to 2015; and Alisha Schrader (Schrader), Patsy Lou Chevrolet's co-sales manager from February 2016 through May 2017.

In late June 2012, Williamson and White met with plaintiff, who at the time was a successful salesperson employed at another dealership, about potential employment at Patsy Lou Chevrolet. Plaintiff told Williamson and White that he had established a good customer base during his 11 years of employment at his current position, that he was earning a good salary, and that he would have to be sure that a job change would be in the best interests of his family.

-1-

During this meeting, Williamson told plaintiff that if he accepted employment he could receive a monthly bonus to start, an annual bonus after the first year, a demo car for his wife, and a free family membership at Sugar Bush Golf Club.

Shortly thereafter, plaintiff attended a second meeting with Williamson and White. At this meeting, plaintiff was presented with a contract ("the bonus contract") that had been prepared by White. White signed the bonus contract on June 21, 2012, and plaintiff signed it on June 23, 2012. The bonus contract was entitled "25 year contract," and provided that plaintiff's employment would begin on July 1, 2012 and that he would receive 18 monthly bonuses of $12,000 (if he sold and delivered a minimum of 20 new or preowned vehicles in each of those calendar months on a 90-day rolling average). The bonus contract also provided that plaintiff could earn one of three yearly bonuses[1] beginning in 2013, with the payout for each year being made in mid-January of the following year. The bonus contract further provided that plaintiff would receive the following benefits "for as long as employment continues": a free family membership to Sugar Bush Golf Club, two free demo vehicles (other than Corvettes or other limited production vehicles) provided that he sold 20 vehicles per month, compensation for each vehicle sold under the "Patsy Lou Automotive groups sales persons" pay plan, and health care per the Patsy Lou Automotive employee benefit package.

After plaintiff signed the bonus contract on June 23, 2012, he completed and signed an application for employment on July 2, 2012. The application stated in relevant part:

> I understand that if I am hired, my employment will be for no definite period, regardless of the period of payment of my wages. I further understand that I have the right to terminate my employment at any time with or without notice, and the Company has the same right. No one other than the President of the Company has authority to modify this relationship or make any agreement to the contrary. Any such modification must be in writing.

Plaintiff also signed a "Pay Plan" agreement on the same date, which stated in relevant part:

> I understand that the terms and conditions herein described represent the general method by which my compensation is calculated, any example is used for illustrative purposes only and does not necessarily imply that any such amount may be attained. I also understand that is [sic] pay plan is for no fixed term and may be altered or rescinded in whole or in part at any time with or without notice at the sole option of the company. Furthermore, I agree that employment is "at-will" and that this pay plan does not create an express or implied contract, covenant, promise, or representation that employment will continue for any specified period of time.

---

[1] Plaintiff could earn $75,000 for 240-299 yearly sales (deliveries), $100,000 for 300-350 yearly sales (deliveries), or $150,000 for 351 or more yearly sales (deliveries).

According to defendants, plaintiff also signed, on the same day, a "New Hire" agreement and a "rules and regulations" agreement that contained similar provisions regarding at-will employment, although plaintiff denied that the signature on these two documents was his. Plaintiff admitted to signing the application for employment and the Pay Plan agreement.

After plaintiff's employment commenced, plaintiff earned 16 of the 18 possible monthly bonuses set forth in the bonus contract, and annual bonuses of $75,000 in 2013, 2014, and 2015. In August 2016, a dispute arose between plaintiff and another salesperson, Andrea McGigor (McGigor), about an anticipated commission relating to the potential lease of a vehicle to Jeff Morgan (Morgan). McGigor had contacted Morgan, who was nearing the end of a lease term on a business vehicle, to see if he was interested in leasing a new vehicle. McGigor and Morgan discussed the type of vehicle that Morgan was interested in and a price point for the vehicle. McGigor was unaware that Morgan was a previous customer of plaintiff's until Morgan came into the dealership to meet with McGigor. She was also unaware that plaintiff and Morgan were related. McGigor told plaintiff that Morgan was in the showroom and, after talking to plaintiff, McGigor told Schrader that she would be able to work out the commission with plaintiff and that plaintiff told her to continue assisting Morgan. McGigor then began looking for a vehicle that would suit Morgan's needs. Morgan located a vehicle within a day or so and invited Morgan back to the dealership for a test drive.

Shortly before Morgan was to arrive for the test drive on August 12, 2016, McGigor told Schrader that plaintiff had reneged on his agreement to split the commission and had told her that he wanted the full commission. Schrader spoke to plaintiff about the "team environment" at Patsy Lou Chevrolet and about the amount of time that McGigor had put into the deal, and encouraged him to work something out with McGigor with respect to the commission. Plaintiff told Schrader that it was "his deal and his customer" and that he would not split the commission with McGigor. Plaintiff testified at his deposition that he told Schrader that if she was going to give McGigor half of the commission, then she should give all of the commission to her, to which, according to plaintiff, Schrader said, "Maybe I will."

When Morgan arrived at the dealership, McGigor gave him the keys to the vehicle. Plaintiff went on the test drive with Morgan. During the drive, plaintiff told Morgan that "they want to give your whole truck deal to this gal who called you on the phone." Morgan told plaintiff that he would not go through with the deal. Morgan returned to the dealership after the test drive and told Schrader that he loved the vehicle but that he was not going to lease it because he did not want to create any "family issues."

Schrader was frustrated by plaintiff's decision to violate company policy by talking to Morgan about who would receive the commission on the customer's lease, and by the loss of a sale. Schrader consulted with another manager, with the new car director, and with the executive vice-president, and they all agreed that plaintiff's employment should be terminated. Schrader terminated plaintiff's employment that day.[2] In completing an employee separation report, under

---

[2] Plaintiff began working for Suski Chevrolet three days later.

the heading of "Please provide details on all involuntary terminations," Schrader wrote "At will employment" as she was directed to do by the executive vice-president. Schrader testified at her deposition regarding several earlier incidents in which plaintiff had disputes with other salespeople over commissions or engaged in inappropriate workplace behavior, including two incidents in which plaintiff was involved in a shouting match with a co-manager and one incident in which he had a loud argument with his brother on the sales floor. She described the latest incident as "the straw that broke the camel's back," leading to plaintiff's termination.

On November 23, 2016, plaintiff filed suit against defendants, alleging (1) breach of a just-cause employment contract; (2) age and gender discrimination under the Elliott-Larsen Civil Rights Act (ELCRA), MCL 37.2101 *et seq*.; (3) retaliation under ELCRA; (4) violation of the sales representatives' commissions act (SRCA), MCL 600.2961; and (5) wrongful discharge in violation of public policy. With respect to the breach of contract claim, plaintiff alleged that the bonus contract was an employment contract for a definite period of time (25 years), that plaintiff could only be terminated for just cause, and that defendants had fabricated reasons to terminate his employment. With respect to the age and gender discrimination claims, plaintiff alleged that he was a 56-year-old male, that defendants had a predisposition to discriminate against employees on the basis of age or gender, that defendants acted on this predisposition when they took sales and commissions away from him and gave them to younger female salespersons who had little interaction with the customer, and that they took action against plaintiff when he raised concerns and issues about the discrimination. With respect to the retaliation claim, plaintiff alleged that when he went to Schrader about his concerns regarding commissions, he was told to be a "team player" and that one of the reasons he was terminated was because he refused to "go along with the scheme to take away his earned sales and commissions and give them to younger female sales associates who were not involved in the transaction." With respect to the SRCA claim, plaintiff alleged that he was entitled to commissions "as laid out in the '25-year contract' " and that he had not been paid all commissions due and owing. With respect to the public policy violation claim, plaintiff alleged that he engaged in protected activity when he "would not go along with Defendants' request to add unnecessary costs to the customers he established" and that he suffered damages "as a direct and proximate result of the Defendants' breach of the public policy."

Defendants moved for summary disposition on each of plaintiff's claims under MCR 2.116(C)(10). Defendants asserted that plaintiff's reliance on the bonus contract was misplaced because the contract was a bonus agreement that contained no language stating that plaintiff's employment could only be terminated for just cause and no language indicating that the contract could not be terminated for 25 years. Defendants further noted that the employment application plaintiff signed after he signed the bonus contract expressly provided that his employment would be for no definite period, regardless of when his compensation would be paid. Additionally, defendants argued that, on the same day plaintiff signed his employment application, plaintiff signed three separate documents, apart from his application, that contained "at-will employment" disclaimers, although, as noted, plaintiff denied having signed two of these

documents. Defendants maintained that plaintiff was an at-will employee whose employment could be terminated at any time regardless of cause.[3]

Defendants also argued that plaintiff could not establish a prima facie case of age or gender discrimination because he had not presented any evidence that defendants ever treated any other salespersons outside his protected class any differently than they treated him for engaging in the same or similar conduct, could not show that defendants hired anyone outside his protected class to replace him, and could not otherwise show that defendants were predisposed to discriminate against him on the basis of his age or gender. Defendants further argued that even if plaintiff could establish a prima facie case of discrimination, he could not establish that the stated reasons for his termination were pretextual. Relatedly, defendants argued that plaintiff could not establish a prima facie case of retaliatory discharge, noting that plaintiff had admitted that he never filed a charge with the Equal Employment Opportunity Commission (EEOC) or Michigan Department of Civil Rights (MDCR) alleging that he faced discrimination, that he never participated in any EEOC or MDCR investigations, and that he never spoke to anyone in management about discrimination.

With respect to the SRCA claim, defendants argued that plaintiff received payment for all of the commissions that were owed to him for the sales or leases he made during the time he worked for Patsy Lou Chevrolet. With respect to the wrongful discharge in violation of public policy claim, defendants argued that the claim failed because plaintiff had admitted that he was never asked to engage in any illegal or inappropriate conduct during his employment.

The trial court granted summary disposition in favor of defendants under MCR 2.116(C)(10) on each of plaintiff's claims. The court found that the bonus contract on which plaintiff relied for his claim of just-cause employment merely provided the terms of a bonus schedule and fringe benefits and that other documents that plaintiff signed expressly provided for at-will employment. The court also found that plaintiff had failed to present any evidence showing that his age or gender played any role in the termination of his employment. Additionally, the court found that plaintiff had failed to satisfy his prima facie burden with respect to his retaliation claim under ELCRA. With respect to the SRCA claim, the court found that plaintiff had failed to rebut defendants' documentary evidence showing that plaintiff was paid the full commission for every vehicle that he sold or leased during his employment. Lastly, the trial court found that plaintiff's wrongful discharge in violation of public policy claim was deficient as a matter of law because plaintiff had admitted that he was never asked to engage in illegal or inappropriate conduct during his employment.

This appeal followed.

---

[3] Defendants also argued that dismissal of the claim against Williamson, White, and Patsy Lou Automotive Group was warranted because the evidence established that neither Williamson nor White was involved in the decision to terminate plaintiff's employment, and because Patsy Lou Automotive Group did not exist at the time the bonus contract was executed. The trial court did not specifically address these arguments in granting defendants' motion.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision to grant a party's motion for summary disposition under MCR 2.116(C)(10). See *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). Summary disposition is proper under MCR 2.116(C)(10) if "there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). We consider the affidavits, pleadings, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. *Liparoto Constr, Inc v Gen Shale Brick, Inc*, 284 Mich App 25, 29; 772 NW2d 801 (2009). All reasonable inferences are to be drawn in favor of the nonmovant. *Dextrom v Wexford County*, 287 Mich App 406, 415; 789 NW2d 211 (2010).

This Court also reviews de novo a trial court's interpretation and application of a contract. *Rossow v Brentwood Farms Dev, Inc*, 251 Mich App 652, 658; 651 NW2d 458 (2002).

## III. BREACH OF CONTRACT CLAIM

Plaintiff argues that the trial court erred by granting summary disposition in favor of defendant on his breach of contract claim, because the employment documents he signed, when considered along with the bonus agreement, created at least an ambiguity regarding whether his employment was intended to be at-will. Therefore, plaintiff argues, the question of whether the parties intended plaintiff's employment to be at-will is a question of fact for a jury to resolve. We disagree.

"Generally, and under Michigan law by presumption, employment relationships are terminable at the will of either party." *Lytle v Malady (On Rehearing)*, 458 Mich 153, 163; 579 NW2d 906 (1998). Such employment is called "at-will" employment. See *id*. At-will employment relationships may be terminated "for any reason or no reason at all." *Rood v Gen Dynamics Corp*, 444 Mich 107, 116; 507 NW2d 591 (1993). However, the presumption of at-will employment may be sufficiently rebutted to impose limitations on an employer's right to terminate employment if proof is submitted of "either a contract provision for a definite term of employment, or one that forbids discharge absent just cause." *Lytle*, 458 Mich at 164. One method of proving such contractual terms is "proof of a contractual provision for a definite term of employment or a provision forbidding discharge absent just cause." *Id*.

Our Supreme Court recently stated in *Kendzierski v Macomb Co* ___ Mich ___, ___; ___ NW2d ___ (2019) (Docket No. 156086); slip op at 10-11:

> "Our goal in contract interpretation is to give effect to the intent of the parties, to be determined first and foremost by the plain and unambiguous language of the contract itself." "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." "However, if the contractual language is ambiguous, extrinsic evidence can be presented to determine the intent of the parties."

-6-

"A contractual term is ambiguous on its face only if it is equally susceptible to more than a single meaning." In addition, "if two provisions of the same contract irreconcilably conflict with each other, the language of the contract is ambiguous." However, "ambiguity is a finding of last resort . . . ." That is, "a finding of ambiguity is to be reached only after all other conventional means of interpretation have been applied and found wanting." "[W]e will not create ambiguity where the terms of the contract are clear." "[C]ourts cannot simply ignore portions of a contract . . . in order to declare an ambiguity." [Citations omitted; alterations added by the *Kendzierski* Court.]

In this case, the plain language of the bonus contract does not reveal an express and unambiguous promise to employ plaintiff for 25 years. The bonus contract does not contain any language indicating that the parties intended to enter into an employment contract for a defined term, nor does it contain any language indicating that plaintiff's employment was terminable only for just cause or indeed address the issue of termination of employment at all. Rather, the plain and unambiguous language of the bonus contract sets forth the details of monthly and yearly bonuses that plaintiff could earn upon meeting defined sales goals within defined time frames, and provided that plaintiff would receive enumerated fringe benefits "for as long as employment continues." The use of the title "25 year contract," when read in conjunction with the language and subject matter of the contract, defines the duration of contractual provisions set forth therein—that is, the bonus schedule and fringe benefits. In other words, the bonus contract guaranteed the bonus schedule and fringe benefits as long as plaintiff remained employed or until the contract expired.

The bonus contract is unambiguous and did not reflect an intent by the parties to provide plaintiff with just-cause employment for a 25-year term (or, for that matter, for any defined term). If the parties had intended such a term of employment, they could have included language to that effect in either the bonus contract or other employment documents. Instead, the terms of plaintiff's employment, set forth and clearly stated in the documents that plaintiff has admitted to signing (even crediting plaintiff's denial of having signed the "New Hire" and "rules and regulations" agreements)[4] were that plaintiff's employment was at-will. The trial court did not err by granting summary disposition in favor of defendants on plaintiff's breach of contract claim. See *Maiden*, 461 Mich at 118.

## IV. ELCRA CLAIMS

Plaintiff argues that the trial court erred when it granted defendants' motion for summary disposition of his discrimination claims under ELCRA because he established genuine issues of

---

[4] Although it matters not to our analysis, we note that the record reflects that defendants submitted affidavits of a forensic document analyst and ink dating specialist who opined that the signatures on all of the documents were signed by the same person, and that the ink on the employment application and Pay Plan agreement matches the ink on the New Hire and rules and regulations agreements.

material fact both as to whether he established a prima face case of age and/or gender discrimination, and whether defendants' proffered reasons for terminating his employment were a mere pretext for intentional discrimination. Plaintiff further argues that the trial court erred by granting summary disposition on his claim for retaliatory discharge. We disagree.

MCL 37.2202(1)(a) of ELCRA provides:

(1) An employer shall not do any of the following:

(a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

When, as here, there is no direct evidence of discrimination, the plaintiff "must then proceed through the familiar steps" of *McDonnell Douglas Corp v Green*, 411 US 792, 802-803; 93 S Ct 1817; 36 L Ed 2d 668 (1973), to avoid summary disposition. *Hazle v Ford Motor Co*, 464 Mich 456, 462-463; 628 NW2d 515 (2001). "The *McDonnell Douglas* approach allows a plaintiff 'to present a rebuttable prima facie case on the basis of proofs from which a factfinder could *infer* that the plaintiff was the victim of unlawful discrimination.' " *Id*. at 462 (citation omitted).

To satisfy the *McDonnell Douglas* framework and avoid summary disposition, the plaintiff must first put forth evidence establishing a prima facie case of discrimination. *Hazle*, 464 Mich at 463. To establish a prima facie case of discrimination, the plaintiff is required to present evidence that (1) he belongs to a protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position, and (4) he was discharged under circumstances that give rise to an inference of unlawful discrimination. *Id*. If the plaintiff is able to successfully establish a prima facie case of discrimination, "the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action taken." *Major v Village of Newberry*, 316 Mich App 527, 541; 892 NW2d 402 (2016). If the defendant is able to do so, the plaintiff must present evidence that the explanation provided by the employer constitutes pretext for discrimination. *Id*. at 542. A plaintiff can establish pretext: "(1) by showing the reasons had no basis in fact, (2) if they have a basis in fact, by showing that they were not the actual factors motivating the decision, or (3) if they were factors, by showing that they were jointly insufficient to justify the decision." *Id*. at 542 (citation omitted).

Plaintiff argues that he presented evidence that he was discharged under circumstances that gave rise to an inference of unlawful discrimination. He argues that defendants demonstrated discriminatory animus because he was entitled to a commission on the lease of a vehicle to Morgan and because Schrader "wanted to give the commission to" McGigor, a younger female. We disagree.

It is unclear why plaintiff believes that his interaction with Schrader arising from a commission dispute with McGigor supports his prima facie case of age or gender discrimination, other than the mere fact that both are female and younger than he is. Plaintiff presented no evidence that his age or gender was in any way a factor in defendants' decision to terminate his

employment. Plaintiff's verbal exchange with Schrader about splitting a commission with McGigor[5] does not provide indirect evidence that plaintiff's termination occurred under circumstances that give rise to an inference of unlawful discrimination; nor did plaintiff present any other evidence that would support such an inference. Accordingly, the trial court did not err by granting summary disposition in favor of defendants on plaintiff's age and gender discrimination claims under ELCRA. *Hazle*, 464 Mich at 462.

Plaintiff also argues that the trial court erred by granting summary disposition in favor of defendants on his retaliation claim. Again, we disagree. MCL 37.2701(a) prohibits retaliation where a party lodges a charge or a complaint about a violation of ELCRA. To establish a prima facie case of retaliation, a plaintiff must show: (1) that he engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Garg v Macomb Co Mental Health Servs*, 472 Mich 263, 273; 696 NW2d 646 (2005) (quotation marks and citation omitted).

Plaintiff argues that he raised a genuine issue of material fact regarding whether a causal connection exists between protected activity and the adverse employment action. "To establish causation, the plaintiff must show that his participation in activity protected by the [ELCRA] was a 'significant factor' in the employer's adverse employment action, not just that there was a link between the two." *Barrett v Kirtland Comm College*, 245 Mich App 306, 315; 628 NW2d 63 (2001). Specifically, plaintiff alleged that he was engaged in protected activity when he "refused to go along with the scheme to take away his earned sales and commissions and giv[e] them to younger female sales associates who were not involved in the transaction." Plaintiff contends that his discussion with Schrader about splitting with McGigor the commission that would result from a lease to Morgan was protected activity. He maintains, without explanation, that this discussion "raised the specter of discrimination." *Barrett*, 245 Mich App at 319 (noting that an "employee's charge must clearly convey to an objective employer that the employee is raising the specter of a claim of unlawful discrimination pursuant to [ELCRA]"). However, plaintiff testified in his deposition that even he did not believe, at the time he objected to sharing a commission with McGigor, that he was complaining about or discussing alleged discrimination. Rather, plaintiff's complaints were a general assertion that he was being treated unfairly, which does not raise the specter of discrimination under ELCRA. See *id* at 319-320 (stating that "the evidence merely established that plaintiff was asserting generic, non-sex-based complaints regarding his working conditions and that those complaints were not based on sex"). The trial court did not err by granting summary disposition in favor of defendants on plaintiff's retaliation claim under ELCRA. See *Maiden*, 461 Mich at 118.

---

[5] There was no commission to be split because Morgan declined to lease the vehicle after plaintiff told him that they wanted to give the commission to McGigor.

## V. SRCA CLAIM

Plaintiff also argues that the trial court erred by granting summary disposition on his claim for unpaid commissions under the SRCA. We disagree. The SRCA establishes due dates for the payment of commissions to terminated sales representatives and imposes penalties on principals who intentionally fail to pay commissions by the due dates. MCL 600.2961(4) provides: "All commissions that are due at the time of termination of a contract between a sales representative and principal shall be paid within 45 days after the date of termination. Commissions that become due after the termination date shall be paid within 45 days after the date on which the commission became due."

In moving for summary disposition on the SRCA claim, defendants presented an affidavit from the CEO/CFO of Patsy Lou Chevrolet stating that the company's commission records showed that plaintiff had received all commissions due and owing to him for every vehicle that he sold or leased during his employment. A properly supported motion for summary disposition shifts the burden to the opposing party to establish that a genuine issue of material fact exists. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). In doing so, the nonmoving party cannot rely on mere allegations or denials, but must instead, "by affidavits or as otherwise provided in [MCR 2.116], set forth specific facts showing that there is a genuine issue for trial." *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 374; 775 NW2d 618 (2009) (quotation marks and citations omitted). If the opposing party fails to present documentary evidence establishing the existence of a material factual dispute, the motion is properly granted. *Quinto*, 451 Mich at 363.

Here, plaintiff argued before the trial court, and argues on appeal, that his sworn deposition testimony that he did not receive the full amount owed to him for nine vehicles that he had sold was sufficient to create a genuine issue of fact. Plaintiff did not specifically identify to the trial court which portions of his testimony plaintiff was relying on in support of his claim. At the hearing on the motion, plaintiff's counsel merely cited to "pages 148 to 154" of plaintiff's deposition, where he "lays it out with the proverbial trowel on why he's entitled to commissions and such." Our review of that testimony shows that plaintiff complained that his last checks from Patsy Lou Chevrolet did not appear to reflect the appropriate amount of commission from nine car sales, but also stated that he did not know precisely how much he had earned in commission on the sales. Plaintiff failed to present documentary evidence to establish the existence of a material factual dispute; rather, plaintiff's deposition testimony merely reflects his generalized and subjective belief that his last checks should have been larger. The trial court properly found that, when viewed in a light most favorable to plaintiff, no genuine issue of material fact was presented with respect to the SRCA claim. See *Maiden*, 461 Mich at 118.

## V. WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY CLAIM

Plaintiff argues the trial court erred by finding as a matter of law that plaintiff did not engage in "protected activity" such as would support his claim for wrongful discharge in public policy. We disagree.

An exception to the at-will employment doctrine exists based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable.

*Suchodolski v Mich Consol Gas Co*, 412 Mich 692, 695; 316 NW2d 710 (1982). A cause of action for wrongful termination in violation of public policy may exist when an employee was discharged for acting in accordance with a statutory right or duty, when an employee was discharged for refusing to violate the law in the course of employment, or when the discharge was retaliation in response to the employee's exercise of a clearly established right created by legislation. *Id*. at 695-696.

Here, plaintiff generally alleged the elements of a public policy claim in his complaint, and specifically alleged that he engaged in protected activity by refusing defendants' request to add unnecessary costs to the sales or leases of established customers. At his deposition, however, plaintiff admitted that he was never asked to engage in any illegal or inappropriate conduct during his employment. He testified that defendants required him to take customers through the accessories department and to show customers the accessories that were available for their vehicles. Plaintiff conceded, however, that the decision whether to purchase accessories was left to the customer. Plaintiff failed to provide any evidence to support his allegation that an employer's requirement that salespersons take customers into a department to show them available accessories amounts to an "illegal practice." Because plaintiff failed to provide any factual support for his public policy claim, plaintiff failed to establish a genuine issue of material fact and summary disposition of the claim under MCR 2.116(C)(10) was appropriate. See *Maiden*, 461 Mich at 118.

## VI. AMENDMENT OF THE COMPLAINT

Plaintiff argues that the trial court abused its discretion by failing to address plaintiff's oral motion to amend his complaint to add a claim of fraud or misrepresentation. We disagree. "Whether to grant leave to amend a complaint is left to the sound discretion of the trial court." *McQueer v Perfect Fence Co*, 502 Mich 276, 296; 917 NW2d 584. Plaintiff's oral motion expressly sought to amend his complaint *if* defendants were to "claim that there's no contract here because there's no Patsy Lou Automotive anymore,"[6] and *if* the trial court then declined plaintiff's request to hold that there was a "contract by estoppel." But defendants never made such a claim, and the trial court thus never had to address whether there was a "contract by estoppel." Because plaintiff's oral motion to amend the complaint was specifically conditioned on circumstances that never came to exist, the trial court did not need to decide the motion.

Affirmed.

/s/ Anica Letica
/s/ Michael J. Kelly
/s/ Mark T. Boonstra

---

[6] Patsy Lou Williamson Automotive Group, Inc. was a corporate entity that was dissolved several years earlier.

-11-